# WHALON v. NORTH PLATTE CANAL AND COLONIZATION COMPANY.

APPEAL AND ERROR — CUMULATIVE EVIDENCE — EVIDENCE — WATER RIGHTS, PRIORITY—STATUTORY CONSTRUCTION—DITCHES—RIGHT OF WAY—CONVEYANCES—ACKNOWLEDGMENT—NECESSITY OF RECORDING—JUNIOR APPROPRIATOR OF WATER NOT SUBSEQUENT PURCHASER.

1. · In a contest over a right of way between the owners of irrigating ditches, plaintiff being the owner of one of` the ditches and the land, and his possession of the land being conceded, the exclusion of evidence to show certain construction work by plaintiff before the filing of his application for a permit to make an appropriation of water, was not prejudicial error, even though admissible to show plaintiff's possession of the right of way; since for that purpose the evidence would have been merely cumulative.

2. The evidence was not admissible to show priority of water right, since the priority would have dated from the filing of the application for permit upon its approval, rather than from survey and partial construction of the ditch anterior to the application.

3. Under the present statutory system priority of a water right dates from the filing of an application for a permit in the State Engineer's office. (R. S., Secs. 917-929.)

4. A mere excavation called a "ditch," not connected with any water right, does not come within the exception mentioned in the statute which, in allowing to a ditch company a right of way over the lines named in its certificate of incorporation, provides that such lines shall not interfere with any other ditch whose rights are prior to those acquired by the company. A ditch with rights is there re-

ferred to; and one built without authority, which confers no right to divert water. is not intended.

5. If the ditch of plaintiff possessed value as a mere excavation it will be assumed that it was considered by the appraisers in estimating plaintiff's damages in the condemnation suit brought by defendant to secure right of way for its ditch over the lands of plaintiff.

6. In case of conflict as to the line to be occupied by two irrigating ditches, the owner of each ditch having obtained by application and permit the right to divert and appropriate water by means of his proposed ditch, the party having the prior right under his application and permit will have a prior right to the line; and the fact that the point of conflict is located on the land of the other party will make no difference, where right of way over such land has been secured through condemnation proceedings by the owner of the prior right.

7. No prescribed form of words is essential to convey real estate, but the instrument must contain sufficient words to show an intention to convey.

8. The words "transfer, sell, release," or "transfer, sell, assign and set over," are sufficient to show an intention to convey, and will constitute an instrument otherwise sufficient a conveyance.

9. An acknowledgment usually has reference to the proof of execution, and is required to entitle the instrument to record; but it is not an essential part of the instrument, so that its absence will prevent the passing of title, unless the statute expressly so declares.

10. A written instrument conveying a water right may be sufficient to pass the title of the grantor, though not acknowledged or recorded.

11. A permit issued by the State Engineer to make an appropriation of water for beneficial uses, and the water right represented and acquired thereby may be transferred by a conveyance which is not acknowledged.

12. The statute requiring a conveyance to be recorded to be valid as against a subsequent purchaser of the same real estate, or any portion thereof, whose conveyance shall be first duly recorded (R. S., Sec. 2762), has reference to the recording

of instruments in the office of the County Clerk and ex-officio Register of Deeds.

13. A conveyance of a water right sufficient between the parties to pass title, but not acknowledged or recorded, is not, for that reason, void as against a junior appropriator.

14. A junior appropriator is not to be regarded as a purchaser of the same real estate so as to entitle him to object to a prior appropriator's conveyance on the ground that it was not acknowledged and recorded.

15. Certain instruments purporting to transfer the grantor's right and title to a particular water appropriation shown by a permit from the State Engineer, held to contain sufficient words to operate as conveyances of realty, and sufficient to convey the water right of the grantor, and to be valid as against one whose right, if any, was that of a junior appropriator, notwithstanding that such instruments had been neither acknowledged nor recorded in the office of the Register of Deeds.

[Decided March 31, 1903.]                    (71 Pac., 995.)

ERROR to the District Court, Laramie County, HON. RICHARD H. SCOTT, Judge.

Action to enjoin the threatened construction of a ditch across the lands of plaintiff. The material facts are stated in the opinion.

*W. R. Stoll,* for plaintiff in error.

The point at issue in the entire case is whether the plaintiff in error was prior in point of time, and, therefore, in right, with the Whalon Ditch, or whether the defendant in error was prior in point of time, and, therefore, in right, with the Whalen Falls Canal and Power Company Ditch. Upon the theory of the plaintiff in error, he was prior in point of time, and, therefore, in right. If this be correct, the ruling of the court excluding the testimony offered by him was erroneous and the judgment of the court was also erroneous.

THE EXCLUDED EVIDENCE.—Plaintiff in error admits, as a proposition of law, that in this State, as a rule, the date of the priority of an appropriation of water is the date of the application made in the State Engineer's office; but he contends that the relative rights of conflicting claimants may not always be so determined, and sometimes, other things being equal, that the question of possession of the ditch or right of way may be material in determining such relative rights.

The defendant in error had contended that the plaintiff in error had no ditch at all, and the evidence of previous construction was clearly material to show the existence of a ditch, or a line of ditch, at least subsequent to November 19th, 1901.

It is fundamental that the appropriator of water must use reasonable diligence in the construction of his means of appropriation, and the offered evidence was admissible to show that the plaintiff in error, since making his application, had at least been reasonably diligent, and for this reason it was error to exclude such testimony.

It was also contended, both in the pleadings and in the evidence by the plaintiff in error, that the defendant in error had never made any application for a permit, and had never succeeded to the rights of anyone who ever had made such an application for the line of the ditch claimed by the defendant in error. If this was true, then, clearly if the defendant in error claimed it had any right to claim any interest in its so-called ditch, the said interest could have resulted only from its possession of the line of such ditch. This being so, the question as to whether or not the defendant in error had any line of ditch at all, or whether or not it had ever been in possession of the line which it was alleged to claim, and the question as to whether or not the plaintiff in error had not only applied for a permit, but had previously thereto been in possession of the line of his ditch, and had gone so far as to construct its headgate and had built a considerable portion of the ditch itself, were ma-

terial questions, in order to settle the rights between the plaintiff and defendant; and, hence, the exclusion of this testimony was error under the issues made in the pleadings and under the contention of the respective parties on the trial.

Further, it is plain that if the contention of the defendant to the effect that the plaintiff's ditch was an impracticable one, and the land could not be irrigated from it, had any foundation, then the evidence offered by plaintiff in error to show that the ditch was a practicable one, and that the land in question was irrigable therefrom, was material evidence; and in any event it is believed that it is incumbent upon the appropriator of water to show, not only reasonable diligence in the construction of a ditch, but also that the ditch is designed to irrigate certain lands which are irrigable therefrom, and for this reason there was error in excluding the evidence offered.

Also, it was competent to show the conflict in the lines of the respective ditches, thereby tending to establish whether or not the allegations of the petition to the effect that the defendant's contemplated line of ditch would obstruct and destroy the plaintiff's line of ditch, and evidence tending to show the routes of the respective ditches and a conflict between the same, as determined by a competent engineer, was most material.

Defendant Did Not Succeed to Any Rights.—That the defendant never acquired any rights in or to its so-called line of ditch, either originally or by succeeding to the rights of anyone else, will be apparent from the following:

1.  In the first place, the defendant never made any application for a permit to divert waters by means of the Whalen Falls Canal and Power Company Ditch, or any other ditch.

2.  John Hunton and Florence A. Miller made an application for a permit for the Whalen Falls Canal and Power Company Ditch on September 6th, 1901, and this application was made for themselves, and for no one else.

3. The question, then, resolves itself into whether or not defendant succeeded at any time before November 19, 1901, as against the plaintiff, to the rights of John Hunton and Florence A. Miller.

Defendant claims that it succeeded to the rights of those persons by reason of certain assignments. An examination of the assignments will show that not one of them was executed or acknowledged as the statutes of this State require instruments conveying an interest in real estate to be executed and acknowledged. Not one of them was filed for record, or recorded in the office of the County Clerk, but were filed in the office of the State Engineer, not, however, until December, 1901.

The assignments raised the main contention in the case, and it is submitted that they were insufficient to convey any interest whatever in the ditch in question to the defendant, as against the plaintiff. The following propositions are submitted:

1. The assignments, or purported assignments, are insufficient to convey any interest in real estate, and, therefore, insufficient to convey any interest in or to the right of way, or ditch, or water right, or so-called survey, of the defendant.

Any conveyance of lands, or any interest in lands, must be executed and acknowledged in the manner prescribed by statute.

2. Unless a conveyance is made in accordance with the statutory requirements, it cannot be recorded. (R. S., Secs. 2754, 2758, 2759, 2760, 2761, 2762.)

3. Any interests whatever in real estate can be conveyed or *assigned* only in the manner above pointed out. It does not matter what is attempted to be conveyed, if what is attempted to be conveyed is a title to any kind of real estate. The conveyance must comply with the provisions of the statutes. (R. S., Secs. 2728, 2731, 2732, 2733, 2739.)

4. A water right, which includes always a right of way for the ditch conveying it, is a species of real estate, or, at least, it is an appurtenance to real estate.

It is not necessary that the term real estate should, by virtue of any special statute, be made to include water rights. Water used or to be used in connection with land was always appurtenant to such land at common law, and this common law doctrine, irrespective of any statute, has been applied in the arid region. And even in states where nothing is said as to the kind of property in a water right, it is held that water rights are a species of realty. (Kinney on Irrig., Secs. 223, 224, 267; Hill v. Owen, 5 Cal., 445; Ditch Co. v. Canal Co., 60 Cal., 408; Barkley v. Tieleke, 2 Mont., 59; Frank v. Hicks, 4 Wyo., 502.)

5. An attempt to convey a water right by an imperfect conveyance operates as an abandonment by the appropriator of his rights, and the rights of the purchaser relate only to the date of his taking possession, as though it were an original appropriation by him. Nor can the vendee, by a verbal contract or unrecorded deed, even accompanied by posession, tack his own use on to that of his grantor who acquired his right by appropriation, and thus cut out the rights of appropriators who were subsequent to the grantor, but prior to himself. (Kinney on Irrig., Secs. 253, 264; Salina Creek Irrig. Co. v. Salina Stock Co. (Utah), 27 Pac., 578; Smith v. O'Hara, 43 Cal., 371.)

It is not contended by plaintiff that, as between the grantor and grantee of a water right, or any other species of realty, a conveyance, though defective in form, may not give to the grantee, as against the grantor, the right of the grantor.

The plaintiff does not claim in this case that the defendant may not estop either Hunton, or Florence A. Miller, or Jones, from asserting any claim to this ditch, as against the defendant; nor does he claim that the defendant may not claim an absolute right to this ditch, as against all persons who may hereafter assert any claim thereto, provided the defendant maintains possession of the same. Here again is seen the significance of the testimony excluded relating to the possession by the plaintiff

of the line of his ditch, because if the defendant had taken possession of the line of its ditch after November 10th, 1901, the date when Florence A. Miller conveyed her interest in the ditch to the defendant, and before November 19th, 1901, the plaintiff might have been estopped from asserting any claim to the right of way in question, by reason of his knowledge that the defendant in error was actually in possession of the line of its ditch, and, therefore, in possession of the line of its right of way where the same conflicts with the line of the plaintiff in error's ditch.

It is submitted that there is no room for any argument of hardship in this or any other case of similar nature. All persons are supposed to know the law.

It may be a considerable hardship to a man who has expended a considerable amount of money in the construction of a ditch to find out that he cannot claim a priority for his ditch of any date whatever, except the date of filing his application in the office of the State Engineer. He is supposed to know the law, and if he has ignored it, he alone is to blame, and his priority will date only from the date of his application, even though he may have built his ditch two years before he made his application, and even though another person may not have started to construct his ditch until a year or more afterward, but who was more regardful of the laws of his State by making an application before he attempted to build his ditch.

A consideration of the great interests involved in the matter of irrigation in the arid regions, as well as a consideration of the ultimate benefit to all by establishing and enforcing well recognized laws, rules and regulations concerning the same, and as well as considering the philosophy and logic of legal and equitable principles, it is submitted that the rule prescribing the date of the priority for a water right to be the date of the filing of the application, is no more imperative, or no more just to all parties, or no more conducive to the best interests of the arid region than is the older and more familiar rule that no interest in a water

right can be conveyed except by a deed executed and acknowledged in all respects as required of a deed conveying interests in realty.

It was suggested in the trial court that the plaintiff could claim nothing by reason of the fact that the State Engineer had not at the time of the trial approved his application. So far as this matter goes, it was alleged that the application was made and would be approved when the same should be reached in due course of business, and there was no evidence offered to contradict this allegation. But whether the application was approved or disapproved, it is submitted that if a man has a right to have his application approved as a matter of law, the engineer cannot disapprove it, nor can he so conduct matters that he can deprive a man of a right which the law would give him, for the convenience of some particular person, or by reason of any personal predilection that the State Engineer might have towards such person.

6. The State Engineer does not have arbitrary power to approve or reject applications, nor is he required to approve or disapprove immediately. (R. S., Secs. 917, 921, 923, 929.)

7. By statute, all water rights pertaining to lands ceded to the State of Wyoming by the United States in 1894, became appurtenant to such lands. Liens were given to any person who should supply a water right upon any such lands, and provisions were made for the foreclosure of such liens requiring the contract as the basis of the lien to be filed in the office of the County Clerk; notice of the sale to be published for six consecutive weeks; such lands to be sold by the sheriff; period of nine months allowed for redemption of the same; and certificate of sale to be issued; and, finally, a sheriff's deed conveying such lands and water rights. (R. S., Secs. 955-961.)

8. In the trial court it was contended on behalf of the defendant in error that, inasmuch as the plaintiff in error had not yet had his application approved, and inasmuch as

his ditch had not been completed, but only partially completed, he could not bring an action to establish a right to the posession of the right of way for his ditch, simply because he had not yet acquired a right to divert water. It is submitted that this contention has no merit.

The term water right is not limited to a complete water right. A water right, in its incipient stages, is as much a water right, so far as the matter of conveying it is concerned, as a complete water right. It is not necessary that all of the steps should have been taken up to and including the final issuing of a certificate by the State Engineer. If the application has been made in the manner required, and rights under it asserted, so far as they can be asserted, there is, so far as the matter of conveying the same is concerned, a complete water right, and it is not improper to refer to it as a water right. (Farmer's Irrig. Co. v. Farmers' Canal Co. (Idaho), 51 Pac., 990.)

9. It seems to be contended that the fact the defendant instituted a proceeding for acquiring a right of way, and because the board of appraisers had proceeded and determined the damages, ignoring entirely the fact as to whether the plaintiff had any ditch or not, and whether or not the defendant's ditch interfered with the ditch of the plaintiff, and the court had made the rule required, and the determination of the board had been filed in the office of the County Clerk; therefore, the right of way for defendant's ditch became absolutely vested in the defendant, and that whatever rights the plaintiff may have had were thereby wiped out.

The fact that Chapter 31, Session Laws 1901, prescribes that the corporation, upon complying with the requirements specified in said chapter, shall become seized in fee of the property which it seeks to have condemned, cannot, in the nature of things, disturb vested rights; and, in any event, must it be read in connection with Section 3067, Revised Statutes of Wyoming, which explicitly provides that the line of ditch proposed to be constructed by a ditch company

shall not interfere with any other ditch whose rights are prior to the rights of the ditch company.

And, further in this condemnation proceeding, the court itself provided in the order appointing the appraisers that the defendant should not take possession of any of the land of the plaintiff pending the condemnation proceedings. (Ch. 31, Laws 1901, pp. 30-32; R. S., Sec. 3067.)

It is submitted that the court could not give to the defendant the right to take possession of the plaintiff's ditch or right of way, if such ditch or right of way was prior in point of time, or prior in right to the right of defendant's ditch.

The court never made any further order authorizing the applicant to take possession of the land of the plaintiff, but even if it be contended that the rule made by the court in accordance with the provisions of Chapter 31, Session Laws of 1901, authorized the applicant to take possession of the entire line of the ditch, we come back again to the proposition above announced, that it would be an order which the court had no power to make. It is submitted that it is too plain for argument that a court cannot make an order which impairs, or disturbs, or annihilates, vested rights; and that, also, even the Legislature under our Constitution cannot pass a law which accomplishes the same result. But it is perfectly plain that the chapter in question did not intend to, nor did it in fact, provide that any ditch company in carrying out the different steps required in that chapter, should have the right to interfere with the line of any other ditch whose rights were prior.

*Van Orsdel & Burdick,* for defendant in error.

We will first consider the error alleged by plaintiff relating to certain testimony excluded by the trial court. This testimony relates to work done by plaintiff upon the construction of the Whalon Ditch prior to the date of the filing of his application for a permit in the office of the State Engineer. It was clearly irrelevant and incompetent

for the reason that any work done by him prior to the date of the filing of his application for a permit was done without authority of law, and could not in any way influence the State Engineer in granting him a permit, or in giving him any right that would be prior or superior to any prior appropriator on the stream. (R. S., Sec. 917.) The priority of his ditch, regardless of whether any construction work had been done or not, could only date from the application in the engineer's office for a permit, the 19th day of November, 1901. (R. S., Sec. 929.) The question of possession cuts no figure. The question of the kind of construction work done upon the ditch cuts no figure. For without a permit, plaintiff would not under the law have a right to proceed with the construction of his ditch. The question of the impracticability of the plaintiff's ditch was not a matter pertinent to the issues in this case, for if plaintiff had a right prior and superior to that of defendant, so recognized by the State Engineer's office, it could not be attacked by the defendant on the question of impracticability. If plaintiff's right was second to the right of the defendant, then it is immaterial to the defendant, or to the plaintiff either, whether plaintiff's proposition was a practicable one or not. The evidence rejected could not under any circumstances be admissible upon the allegation of the impracticability of the plaintiff's ditch. Neither was the evidence offered for that purpose.

It is important to remember, at this point, the priorities of the respective ditches. The Whalen Falls Canal and Power Company Ditch has a priority from the 6th day of September, 1901, the date of the filing of the application for the original permit issued to John Hunton and Florence A. Miller. The Whalen Ditch would have a priority, if a permit had ever been granted (which was not), from the 19th of November, 1901. All the work that an appropriator of water is permitted under the law to perform in advance of the date of his securing a permit from the State Engineer is the making of his survey. The evidence re-

lating to the survey for the Whalen Ditch was all admitted at the trial court. The evidence relating to the construction work on the Whalen Ditch prior to the 19th of November, 1901, the date of his application for a permit, is what was ruled out.

Answering the second division of plaintiff's brief in relation to the validity of the assignments in question, there are several considerations that should be borne in mind.

First—The plaintiff has not at present, and never had, a water right. While the evidence shows that in 1900 he conducted an informal survey over a portion of the line of the original Hunton survey, and in the fall of 1900 began the construction of a ditch, yet this was in direct violation of the statute, by reason of his never having secured a permit to appropriate or divert the waters of the North Platte River or to construct a ditch. In 1901 a permit was granted to Hunton and Miller, which was assigned to the North Platte Canal and Colonization Company. This company immediately began the work of securing a right of way, and it became necessary to deal with the plaintiff in this case. When an agreement could not be reached and condemnation proceedings were instituted, or about to be·instituted, plaintiff filed an application for a permit. His application was refused by the State Engineer upon the ground that it was in direct conflict with a former permit granted, namely, the permit granted to Hunton and Miller. And no permit has ever been allowed to Whalen for the construction of his ditch.

Second—The authorities cited in the brief of plaintiff are not in point, and have no application. The cases cited refer to completed, constructed ditches in full operation; and the principal cases cited also relate to mining claims. The citations from Kinney on Irrigation, Sections 223 and 224, fully sustain our contention. The author is there discussing the character of property, as found in ditches and rights of way for ditches; and the assignment in question in this case neither conveyed a ditch or a right of way for a ditch. Hun-

ton and Miller had neither. They had a bare right to appropriate water from the North Platte River and a right to build a ditch when they had secured a right of way, and the State had secured a segregation of the land to be irrigated; neither of these had been acquired either by Hunton and Miller or the State.

All the right acquired by Hunton and Miller at the time of the assignment to the defendant company was an incorporeal right in the waters of the North Platte River to a sufficient portion to supply their needs when the land should be segregated by the State, a right of way secured for the ditch, and the ditch constructed. None of these things had been accomplished. The water right, if such it may be called, was a mere inchoate right.

The case of Barklay v. Tieleke, 2 Mont., 59, is the case of a void instrument between the parties. In the case at bar it is admitted that the instrument is a valid one as between the parties. The theory of Barklay v. Tieleke is that when the instrument itself is void as between the parties by reason of some defect therein, that the grantees do not acquire the rights originally possessed by their grantors, and any rights which they do acquire are held by virtue of recapture or original appropriation, made by themselves and dating from the time they took possession. In this case the theory of Barklay v. Tieleke (which, by the way, is a single case, not generally approved by the courts commenting upon it, and which has been disapproved by the Montana court in the case of the Middle Creek Ditch Company v. Henry, 15 Mont., 558; 39 Pac., 1054), can have no application, unless it is first shown that the assignment here attacked is void as between the parties, and under the ruling of Frank v. Hicks, 4 Wyo., 502, it is impossible to hold that this assignment as between the parties is void.

In the case at bar the defendant company immediately entered into the possession of the rights of Hunton and Miller upon the transfer of the permit. Nothing was transferred but the permit; no right of way; no ditch; no land,

excepting the right granted by the State to apply water to the land described in the permit when the same should be segregated by the Government for that purpose.

By the terms of the permit issued to Hunton and Miller on September 19, 1901, they acquired no land; the land mentioned by the terms of the permit was to be segregated by the Government to the State. They had not even a possessory title in the government land, except such as a permit would give them, contingent upon their construction of a ditch to apply water to the land.

The defendant company, immediately upon the assignment of the permit, applied to the State for a segregation of the lands described therein. It had no right of way—it was proceeding in a legal way to procure a right of way when it was interfered with by this proceeding. It was incorporated on November 9th and instituted condemnation proceedings on November 26th; no prompter action can be conceived.

The contract between the defendant company and the State of Wyoming for the irrigation of the lands to be segregated to the State by the Government of the United States is assignable, and with it would go all rights under the permit. It will not be contended for one moment that an assignment of this contract would have to be by deed duly acknowledged and recorded. Hence, any prospective interest that Hunton and Miller had in the lands described in the permit was assignable by an assignment of their rights under the permit; and such assignment carried with it the inceptive right to construct a ditch and divert water for the irrigation of the lands.

The possessory right to government land in one in whom title has not yet vested may be conveyed by mere assignment or by verbal contract and a water right thereto attached will pass by the conveyance. (McDonald v. Lannon, 19 Mont., 78; 47 Pac., 648; Wood v. Lowney, 20 Mont., 273; 50 Pac., 794; Hindman v. Rizor, 21 Ore., 112; 27 Pac., 13; Lowe v. Schaffer, 24 Ore., 239; 33 Pac., 678; Geddis v. Parish, 1 Wash., 587; 21 Pac., 314.)

In accordance with the general rule governing the conveyance of real estate, it is held that a conveyance of a water right is valid as between the parties, although not acknowledged or recorded, and where a statute declares that a conveyance of real estate not duly recorded shall be void as to a subsequent purchaser of such real estate, whose conveyance shall be first duly recorded, an appropriator of water is not a purchaser in the sense of the statute, and a prior conveyance of the water right, although not acknowledged or recorded, is valid against him. (Middle Creek Ditch Co. v. Henry, 15 Mont., 558; 39 Pac., 1054.)

An assignment of a land certificate is not within the registration acts and does not become inoperative against the sheriff's vendee for the omission to register it. (Falkner v. Jones, 12 Ala., 165.)

The fact that plaintiff may have taken an appeal from the decision of the State Engineer refusing to approve his application, gives plaintiff no standing in this court. This court will not prop up this action and give plaintiff a judgment upon the probable outcome of an action of which they have no knowledge, and of which there is no evidence that it has ever been instituted.

Counsel for plaintiff attacks the ruling of the trial court upon the supplemental petition filed during the trial of this case. This petition was filed for the purpose of introducing in evidence certain papers connected with the condemnation proceedings, and especially the rule entered by the court and recorded in the County Clerk's office. It was contended by counsel for defendant that, inasmuch as the rule had been already entered and recorded in the condemnation proceedings, it operated as an estoppel to any other proceedings in this case.

In this case the plaintiff had no vested right in any water right, for he had not even a permit. He had a vested right in the land condemned, with a few holes on it, which counsel is trying to dignify into a ditch, and the Board of Appraisers allowed him for this land and the holes in

the ground, and defendant paid him the full amount allowed. The rule was conclusive upon the plaintiff. If plaintiff was dissatisfied with the finding of the appraisers, he should have taken an appeal.

Under the laws of Wyoming, the general supervision and control of the waters of the State, and the appropriation of the waters for beneficial purposes, the construction of ditches and other means of conveying water for such beneficial purposes, are all vested in the State. The State, through its officers, regulates all of these matters. A permit to construct a ditch to divert water for the purpose of irrigation is a mere conditional right given to the holder thereof. The permit contains certain conditions precedent that must be carried out and fulfilled by the appropriator before he is entitled to acquire a water right or certificate of appropriation from the State, which is his title to a water right. A failure on the part of the appropriator to comply with all of these conditions is a forfeiture, and all his rights under the permit revert to the State, the State holding this reversional interest, and the appropriator having no rights until the conditions of the permit are entirely complied with. An assignment of this permit cannot be complained of by a third party. In this case the permit was assigned from Hunton and Miller to the defendant company, and the assignment has been accepted and approved by the State. It is admitted that the assignment is good as between the parties. We simply inquire how, or by what authority of law, can Whalen, who is in no way in privity with the source of title, namely the State, or Hunton and Miller, be allowed to complain?

There is a line of authority which seems to us to be directly analogous to the case at bar. The United States granted certain lands to a number of states, Nebraska among others, with the condition that said lands should be sold for not less than $1.25 per acre. The State proceeded to sell a portion of said lands at 50 cents per acre, and issued patents to the purchasers. In other instances the lands

were sold at prices less than the minimum price specified in the original grant. Third parties attempted to attack these sales and the validity of the conveyance, but the courts held universally that such third parties showing no privity with the source of title, namely, the Government of the United States, were not in position to complain, and that the only party that could question the validity of the sale by the states in question was the Government of the United States. It is a common rule that the attacking party must be in privity with the paramount source of the title to assail a grant by it or by its grantee, and that the violation of the terms of a grant by the grantees, or the validity of the grant itself, are not matters warranting action by others than those directly in privity with the source of title, even though fraud may have been practiced upon the granting power. This rule has been of frequent application, and was concisely stated in the case of Van Wyck v. Knevals, 106 U. S., 369. A third party cannot take up questions and enforce conditions attached to the grant, when the Government does not complain of the breach. The holder of an invalid title does not strengthen his position by showing how badly the Government has been treated in reference to the property. (Schulenberg v. Harriman, 21 Wall., 63; Doll v. Meader, 16 Cal., 332; Goodwin v. Davis, 74 Miss., 742; Hitchcock v. Southern Iron Co., 38 S. W., 588; Mory v. Brodt, 53 Pac., 818; S. C., 121 Cal., 332; Duffield v. Spence, 51 S. W. (Tenn.), 497; Frisby v. Whitney, 9 Wall., 195; Sparks v. Pierce, 113 U. S., 408; Deffeback v. Hanke, 115 U. S., 392; Hall v. Rushing, 54 S. W., 32; Hanton v. Hobson, 51 Pac., 433; S. C., 24 Colo., 234; Murray v. Hobson, 13 Pac., 922; S. C., 10 Colo., 66; Mills v. Hobson, 13 Pac., 78; Taylor v. Winona R. Co., 45 Minn., 66; S. C., 47 N. W., 433; Lamm v. Chicago R. Co., 45 Minn., 71; S. C., 47 N. W., 455; Naglee v. Palmer, 50 Cal., 642.)

The rule being as stated, it becomes pertinent to ascertain what relations between parties comes within the term

"in privity with the paramount source of title," and
whether the facts alleged in plaintiff's petition bring him
into such relation with the paramount source of title as
will warrant a suit by him against the defendant. It has
been said that "there is no rule requiring that the defendant
shall have a perfect legal title derived from the United
States before he can question the validity of the title
claimed under the State. It is simply necessary that there
shall be a privity of title between him and the United
States; that is, that he shall possess some right, title, inter-
est or claim in or to the lands thus permitted by the laws
of the United States, to be acquired before the final trans-
mission of the title, and which is recognized by those laws
as a valid, subsisting right, though further acts may be
necessary to be performed by both parties before the title
finally passes from the United States to the claimant. A
pre-emption claim will answer this description." (Robinson
v. Forest, 29 Cal., 320.) Or, again, that "to entitle the
alleged owner, however, to such equitable relation, he must
show that he occupies such a status as entitles him to con-
trol the legal title." (Plumber v. Brown, 12 Pac., 465.)
If, therefore, one to assail the title of the State's grantee
must be in privity with the source of title, and to be in
such privity must possess some right, title, interest or claim
in or to the permit in controversy, such as is permitted by
the laws of the State, how can the plaintiff in this case,
who, upon his own statement of facts, is a mere tres-
passer upon the State's rights, be permitted to construct a
ditch without any permit or authority from the State, and
claim a right of action either against the State or State's
grantee, or the grantees of the State's grantee? In plain-
tiff's petition he alleges occupancy and possession for a
long period prior to the institution of this suit of the line
of ditch in controversy, but such occupancy and possession
was not in the nature of a right, title or claim permitted
by any law of the State. On the contrary, we contend it
to be a mere trespass under the laws of this State as against

the State's legal grantees, and such as could not and did not place plaintiff in privity with the source of title or establish such status as to give him any right of action against the grantee of the State. (Sparks v. Pierce, 150 U. S., 408; Deffeback v. Hanke, 115 U. S., 392.)

And, further, if his mere occupancy of the line of the ditch did appear to put plaintiff in privity with the source of title to the permit in question, and the rights granted by the State under it, which it does not, under any state of facts, still the facts as presented in his petition are lacking in further essentials to state a cause of action against the defendant. If combined with such facts as would put plaintiff in privity with the source of title, there must also be a showing, first, that defendant is entitled to the permit in controversy, and, second, that the plaintiff's right is better than defendant's. (Sparks v. Pierce, 115 U. S., 408; Deffeback v. Hanke, 113 U. S., 392; Refining Co. v. Kemp, 104 U. S., 636; Parker v. Lynch, 56 Pac. (Okla.), 1092; Paine v. Foster, 53 Pac. (Okla.), 109; S. C., 59 Pac., 253; Willoughby v. Townsend, 53 S. W. (Tex.), 581; Gracey v. Hendrix, 51 S. W. (Tex.), 846.)

*W. R. Stoll*, in reply.

It is stated by counsel for defendant that, "This company immediately began the work of securing a right of way, and it became necessary to deal with the plaintiff in this case. When an agreement could not be reached and condemnation proceedings were instituted, or about to be instituted, plaintiff rushed into the engineer's office and filed an application for a permit." There is not a syllable in the record which sustains this assertion. Neither does the record show that "his application was refused by the State Engineer upon the ground that it was in direct conflict with a former permit granted, namely, the permit granted to Hunton and Miller."

As we understand the arguments of defendant, the claim is made that the defendant succeeded to the rights of Hun-

ton and Miller by virtue of certain assignments; and that the right to which they so succeeded was not a right of way, was not a ditch, was not land, but was simply the right granted by the State to apply water to land described in the permit when the same should be segregated by the Government for that purpose.

This right is called an inchoate right, which he admits may be called a water right.

The plaintiff has all along maintained that Hunton and Miller obtained a water right. What they obtained was either a water right or not a water right, or at least it was either an incipient water right or not an incipient water right. They certainly obtained something. The plaintiff in error is the owner in fee of the land over which this ditch described in Hunton's application runs. The pleadings in the case and the evidence given, and the evidence offered to be given, show alike that the defendant claimed the right to cross our lands, and they claim that right for the purpose of building a ditch upon our lands to which we have had title in fee for many years, and further claim the right to run into, absorb and destroy our own ditch, which was upon our own land. Now, defendant must have claimed this by virtue of something. What was it? It was a right of some kind obtained by Hunton as a result of filing his application in the office of the State Engineer and having the same allowed; and that application was for a permit to divert water over these very lands of ours, and through and by means of this very ditch which we complain of.

Where counsel for defendant argues that there is nothing of a substantial nature at all about the right which it claims, we think his argument is inconsistent with the other argument which he makes to the effect that the right which it obtained carried with it the right to build a ditch and to run water. We think it is entirely substantial and capable of inflicting injury upon us, for the reasons (1) that whatever this thing may be which Hunton obtained in the

State Engineer's office, under it the defendant claims the right to go upon our land, to which we have title in fee, and have had for many years, and to build a ditch thereon; and (2) to run into, absorb and destroy a ditch of our own, built wholly and exclusively upon this same land.

We, therefore, think the defendant does claim the right to something of a very substantial nature. And under all of the authorities, this thing can be nothing more or less than a water right.

If, then, it is a water right, it must be conveyed according to the authorities cited, in the manner stated in plaintiff's brief.

If we understand the contention of defendant, the authorities cited in its brief are cited for the purpose of establishing as applicable to this case the proposition that a water right need not be conveyed by deed, nor need it be recorded, but that it is sufficient if, as between parties themselves, there is a verbal or other imperfect conveyance of the water right; and if it is sufficient as between the parties themselves it is sufficient as to all other persons, and all other persons are consequently estopped from asserting anything by reason of the fact of the transfer not being by deed duly recorded. We submit that the authorities do not sustain this proposition.

The cases cited simply announce the doctrine that squatters or settlers upon the public domain by settling thereon and by appropriating water to reclaim the land settled upon or filed upon by them, and thereby obtaining a water right by continuing in possession of the land and in the use of the water appropriated for the land, may transfer their possessory claims verbally; and the verbal grantee by holding possession of the land, and by continuing the use of the water thereon, becomes not only entitled to the land, but also to the water appropriated for the land as appurtenant thereto, and being so entitled to the land with the water appropriated for the same, and being in possession of the land and the water, may maintain possession of the same as

against all other subsequent appropriators.    None of these
cases intimate anything further, and they distinctly put
the right to the water upon the proposition that such water
is appurtenant to the land, and the land being held only
by a possessory right, may be transferred without a formal
deed, and as the land itself may be transferred, that which
is appurtenant thereto goes with it.    These cases nowhere
intimate that if there is no transfer of the possession of the
land the water right can be transferred verbally without it,
but they either intimate or expressly state the doctrine that
if there is a break in the possession of the land, if the pos-
session from grantor to grantee is not continuous, then the
water does not go with the land, because the land itself
does not go.    And the doctrine of the cases emphatically is
that, in order to maintain the water right, it is absolutely
necessary to maintain the possession of the land.    This is
exactly the doctrine that the plaintiff in error contends for
in the case at bar, and is fully sustained by the authorities
cited by defendant.

Cases are cited to show that unless plaintiff connects
himself with the paramount source of title he does not
stand in privity with the source of title; and the conten-
tion is made that the plaintiff has not connected himself
with the State of Wyoming, so as to raise any question
as against the water right claimed by the defendant.    The
doctrine of those cases is a familiar one and perfectly
sound, but without any application to the case at bar.    All
of the cases arose under the following state of facts, or at
least involve the principle involved in such a state of facts,
i. e., the government granted to certain railroads certain
lands.    The grant in terms was a grant in praesenti.    Con-
ditions were imposed requiring certain things to be done by
the company, such as filing a map of its definite location,
etc., and by the terms of the grant provided that when such
map had been filed the grant should take effect.    Subse-
quent to the filing of such map, or subsequent to the doing
of such things by the company, or by the State, or by some-

one else, as specified in the different acts whereby the grant by the necessary terms thereof took effect, claims were made by settlers and others to portions of the land covered by such grants. It sometimes happened that subsequent to the taking of those initial steps, by virtue of which the grant became operative, other conditions were not complied with by the company, or the State, or someone else. It was held in all such cases that the locator upon the public lands, or other claimant thereto subsequent to the grant becoming operative by virtue of the initial steps taken, could not raise any question as to the failure of such subsequent steps. The main question discussed in most of the cases, especially in the earlier ones, was as to whether or not the grant was a grant *in praesenti,* or a grant *in futuro;* and the court held that the grant was a grant *in praesenti.*

The pleadings and the record in this case show conclusively that the land involved in this dispute was the land of plaintiff, to which he had had title in fee for many years, and upon which he had constructed, at least partially, his ditch. There is no question involved in this case of a grant by the State of Wyoming, unless it be held that the approving of an application for a water right, which application was made by Hunton and Miller, amounted to a grant; and in such case the grant could not in the nature of things amount to any more than a right granted or a permission given by the State to Hunton and Miller to make available the water right which they applied for, and which had not been done at the time this suit was commenced.

There is no similarity between the language of the permit, or the application, or the law of this State which gives authority for the making of the application and the approval of the same, and the language of the acts of Congress construed in the cases cited.

An examination of Sections 917-933, Revised Statutes of Wyoming, fails to reveal any of the terms used in a grant even in its simplest nature.

It is plain from all of the sections that there is no thought of making a grant of anything in the nature of a ditch or right of way, and, indeed, it needs no argument to show that the State of Wyoming cannot grant, except probably over its own lands, the right to construct a ditch over any other man's land, or the right of way for any such ditch. All it can do and all it attempts to do is to give an applicant for water permission to go ahead in the manner provided by law and make his application available. And if it can be held that such permission amounts to a grant, then it certainly amounts to the grant merely of a water right; and we then come back to the proposition previously discussed as to what is necessary to transfer a water right.

We maintain now, as we maintained in our main brief, that this plaintiff stands under the laws of this State exactly, in regard to the questions here involved, the same to all intents and purposes as if the State Engineer had on the 19th day of November, 1901, granted him a permit to divert water. In other words, we maintain that, under the record in this case, the plaintiff in error has connected himself in privity with the paramount source of title. So far as that question is involved here, it does not matter whether the State Engineer approved or disapproved his application if, as a matter of law, he was entitled to have it approved; the courts of this State will see to it that it is approved. The record is conclusive upon the proposition that the plaintiff in error must be considered before this court as standing absolutely equal with the defendant, so far as the questions are concerned as to privity with the source of title.

Section 32, Article 1, of the Constitution, refers to the right of eminent domain, and expressly provides that private property shall not be taken for private use unless by consent of the owner, except for ditches and other things specified. Section 35 prohibits the Legislature from ever making any law "impairing obligation of contracts." Under sections of constitutions like this last named section, we

believe it to have been held for many years that a legislative enactment cannot be given such a retrospective construction as to impair vested rights. All laws as a rule operate *in futuro,* and not retrospectively; and we believe it to have been generally held that no legislative enactment will be given a retrospective operation if the effect of it would thereby be to impair vested rights. Under the operation of this principle, we believe it to be a sound proposition that if the plaintiff was entitled to his ditch and his right of way for the same on his own land by virtue of complying with the law relating to the appropriation of water, which was in existence at the time he obtained this right, then Chapter 31 of the Session Laws of 1901 could not be given such a retrospective operation as to deprive him of the right which he had previously obtained.

POTTER, JUSTICE.

Richard Whalon is the owner of certain lands in Laramie County. Alleging that he had partially constructed an irrigating ditch on such lands, as well as a substantial and permanent headgate at the point where the ditch connects with the North Platte River, and that he had applied to the State Engineer for a permit to divert the waters of said river by means of his said ditch, called the "Whalon Ditch," he brought this action to enjoin the threatened construction across a portion of his lands and over the line occupied by his ditch of a ditch known as the Whalen Falls Canal and Power Company Ditch by the defendant; which last mentioned ditch, if constructed as contemplated, will, it is alleged, absorb the ditch of plaintiff where the lines of the two ditches conflict. It is admitted by the pleadings that defendant, a corporation, incorporated under the laws of this State November 9, 1901, is engaged in the construction of a large ditch for the purpose of conveying water for the use and benefit of the various owners of lands lying under the ditch; and that application has been made by the State to the Government of the United States for the

segregation of a large tract of land lying under the proposed ditch, the same to be opened for sale to settlers upon their securing from defendant through its ditch a water right for the irrigation of their respective tracts of land. And it seems to be a conceded fact in the case that a portion of the line of defendant's ditch conflicts with the line of plaintiff's ditch in crossing his land.

It is also admitted by the pleadings that plaintiff on November 19, 1901, filed an application in the office of the State Engineer for a permit to divert waters of the North Platte River by means of the Whalon Ditch for the irrigation of seventy acres of land, but there had been no approval of that application. It is alleged in the petition that the survey for plaintiff's ditch had been commenced in September, 1900, and that work on the ditch was begun in October of the same year, which had been continued until the time of bringing suit, resulting in the completion of about half a mile of the ditch.

It is further admitted that on November 26, 1901, the defendant filed in the District Court a petition for the appointment of appraisers to view the lands of plaintiff and fix the amount of damages plaintiff may sustain by reason of the construction across his land of the ditch of defendant; by which proceeding defendant was seeking the condemnation of a strip of land one hundred and forty feet in width. Plaintiff, however, alleged in his petition that the petition in such condemnation proceedings did not show the existence of plaintiff's ditch. On the trial, defendant having filed a supplemental answer as a basis therefor, gave in evidence the orders of the court and report of appraisers in said proceedings whereby it appears that the appraisers were appointed November 29, 1901; that their report was made January 8, 1902, assessing plaintiff's damages at three hundred and fifty dollars, and said sum was assessed as full compensation to plaintiff for the tract of land condemned, as well as adequate compensation for all damages suffered by him in consequence of the construction, opera-

tion and maintenance of defendant's ditch. It further appears that on January 10, 1902, the court entered a rule reciting the deposit with the clerk, by defendant, of said sum of $350, and adjudging that the same is full compensation, as aforesaid, to said plaintiff. A certified copy of the rule was filed for record on said last mentioned date in the office of the County Clerk and ex-officio Register of Deeds of Laramie County.

The defendant rests its right to construct its ditch and appropriate the waters of North Platte River thereby, upon the alleged fact that it has succeeded to the rights of certain persons who had caused a survey to be made of the first fourteen miles of its proposed ditch, said surveyed line embracing the line of the ditch where it crosses plaintiff's land, and who had secured a permit from the State Engineer to divert the waters of said river by means of said ditch; and whose interests had been transferred to defendant.

It is admitted that prior to September, 1900, one John Hunton made and completed a survey of the first fourteen miles of defendant's ditch, said line extending across plaintiff's land. Defendant alleges that said survey was, on July 21, 1901, sold by said Hunton to one Ernest G. Miller, the engineer of defendant company, for the use and benefit of the company when organized. The fact of such sale is denied by the plaintiff.

It is admitted by the pleadings that on September 28, 1901, a permit was granted by the State Engineer to Florence A. Miller and John Hunton to construct the Whalen Falls Canal and Power Company Ditch along the line of said survey made by said Hunton and an extension thereof made by said Ernest G. Miller, and to appropriate water from the North Platte River for the irrigation of lands lying under the ditch, and described in said permit.

Defendant alleges that it succeeded to all the rights of said Florence A. Miller by an assignment duly executed November 10, 1901; and to all the rights of said Hunton

by an assignment duly executed by him to one John H. Jones October 21, 1901, and an assignment from said Jones to the defendant, dated November. 16, 1901; all of which assignments were filed in the office of the State Engineer on December 2, 1901. These allegations are denied by plaintiff. What may be referred to as the principal question in the case grows out of these alleged assignments. The evidence discloses that on the respective dates alleged certain writings were executed by the parties named, respectively, as set forth in defendant's answer, purporting to transfer and sell the right and title of the grantor to the appropriation of the Whalen Falls Canal and Power Company. But it is insisted on behalf of the plaintiff that, as such writings were not acknowledged, nor recorded in the County Clerk's office, they are insufficient to confer any right or to convey any interest to defendant as against the plaintiff, although it is conceded that they are good and effectual as between the parties thereto.

The cause was tried to the court and judgment was rendered in favor of defendant, and plaintiff prosecutes error. On the trial the State Engineer was called as witness by the plaintiff. He testified that he had not approved the application of the plaintiff, for the reason that he found on examination that it appeared to conflict with a permit previously issued to other parties as to a portion of the line of ditch, and for the further reason that the matter was in litigation and he did not wish, therefore, to take any action. He stated that he had not disapproved the application. He testified that the custom of his office is to take up such applications in the course of business, but not necessarily in the order of their filing. He also testified that the application for the Whalen Falls Canal and Power Company Ditch was filed September 6, 1901, and approved September 26, 1901; and the application of the Whalon Ditch by plaintiff was filed November 19, 1901.

The action of the District Court in excluding certain evidence offered by plaintiff to show the survey of his ditch

and its partial construction in 1900 is assigned as error. It was evidently excluded on the ground that the plaintiff had not been given a permit to appropriate water by means of any such ditch. Section 917, Revised Statutes, provides that any person, association or corporation, intending to acquire the right to the beneficial use of the public water of the State, shall, *before commencing* the construction, enlargement or extension of any ditch, canal or other distributing works, *or performing any work* in connection with such construction, or proposed appropriation, make an application to the State Engineer for a permit to make such appropriation. The application is required to state, among other things, the time within which it is proposed to begin construction; the time required for the completion of construction, and the time required for the complete application of the water to the proposed use. It is provided in Section 929 that the priority of appropriation shall date from the filing of the application in the engineer's office. Section 919 authorizes the engineer in certain cases to reject applications, and refuse to issue a permit. He is authorized to reject when the proposed use conflicts with existing rights, or where it threatens to prove detrimental to the public interest. It is provided in Section 920 that if the application is approved, the applicant shall be authorized, on receipt thereof, to proceed with the construction of the necessary works, and to take all steps required to apply the water to a beneficial use, and to perfect the proposed appropriation. If refused, the applicant is expressly prohibited from taking any steps towards the prosecution of the proposed work, or the diversion and use of the public water, so long as such refusal shall continue in force. Before either approving or rejecting an application the engineer is authorized to require additional information as will enable him to properly guard the public interests. (R. S., Sec. 921.) Upon the perfection of an appropriation, in accordance with the application, and a showing thereof, the Board of Control is required to send to the County Clerk for recording a cer-

tificate setting forth the priority number of the appropria-
tion, the address of the appropriator and a description of
the land to which the water is to be applied, if the appro-
priation be made for irrigation.   (R. S., Secs. 928, 873.)

Before the excluded testimony was offered it had been
shown that plaintiff's application had not been filed until
November 19, 1901.   The trial occurred in January, 1902,
less than two months after the filing of such application.   It
is argued that in any event the testimony was admissible to
show diligence on the part of plaintiff in constructing his
ditch.   And that, as plaintiff denied any right in the de-
fendant as against him, he should have been permitted to
establish his right to his alleged ditch, and his possession
of the right of way.

Plaintiff's ownership of the land was admitted, and as it
was not claimed that any one other than plaintiff was in
possession of the land, it was doubtless a conceded point
that plaintiff was in possession, and hence in possession of
the right of way.   Defendant was proceeding in the con-
demnation proceedings to obtain a right of way and posses-
sion thereof.   As to possession, the offered testimony would
have been cumulative merely, and on that question it is not
perceived how it could have strengthened the plaintiff's
case.   Even if admissible on that ground, its exclusion did
not operate prejudicially.   If plaintiff had a right to construct
his ditch for irrigating purposes, and in pursuance of a de-
sign to perfect an appropriation of water, we fail to observe
how he was injured by the exclusion of the testimony.
Want of diligence could hardly have been urged with any
reason, since there had been no approval of the application,
and less than two winter months had elapsed since its filing.
Indeed, plaintiff was not charged with any lack of diligence.
That was not an issue in the case.

For the purpose of showing priority of water right, we
think that the offered testimony was clearly inadmissible.
Had an approval of plaintiff's application been shown, his
priority would have dated from the filing of the application,

and not from the commencement of the survey and construction that is alleged to have occurred a year or more anterior to such application. Evidence was admitted showing the line of plaintiff's ditch, and the point and extent of the conflict with it of the ditch of defendant.

It must be remembered that the theory of the plaintiff is that the interference of the defendant sought to be restrained is with an irrigating ditch, connected with a water right. The contention here is not that plaintiff has merely made certain excavations upon his land that defendant threatens to use and appropriate. But it is insisted that he has a ditch, using that expression according to the common understanding, as meaning a canal or conduit for the conveyance of water; and, as we understand the case and argument of counsel, it is maintained on behalf of plaintiff that some water right of his is to be injured, interfered with, or destroyed by the construction of defendant's ditch.

Under our present statutory system, the inceptive point or date of a water right is not the commencement of construction, or even the commencement of survey. It is the filing of the application for a permit. Survey must, of course, be made, and it generally, no doubt, antedates the application. There must be construction, and if there has been none an abandonment may be the result. Formerly any person could, without permission of any one, inaugurate and complete an appropriation of water. And many appropriations now existing, made before the adoption of the present statutes, have been established, and others will be established, in respect to priorities, upon evidence as to time of commencing work or making surveys.

Since the enactment into our laws of the system now in force, a water right is not inaugurated by constructing a ditch. The law provides that before beginning construction an application for permit shall be filed; and upon its approval the applicant is authorized to proceed with construction. Hence, it is not perceived how the fact of the survey and partial construction of a ditch by plaintiff in

1900 is relevant upon the question of the priority of water rights between him and the defendant, his application not having been filed until November 19, 1901. The above answers the suggestion that the statutes allowing to a ditch company the privilege of a right of way over the lines named in its certificate provide that such lines shall not interfere with any other ditch whose rights are prior to those acquired by such company. A mere excavation called a ditch on plaintiff's land cannot be construed as coming within the purpose and intention of the statute. A ditch with rights is referred to; and a ditch that is built without authority, the building of which confers no right upon the owner to divert water, is not such a ditch as the statute mentions. If as a mere excavation it possesses value, it will be assumed that it was considered by the appraisers in the condemnation suit.

It must be confessed that if it was necessary to decide this case solely upon the case made by the plaintiff, we would hesitate to hold that he has established in himself such a right as to authorize a court of equity to perpetually enjoin the construction of defendant's ditch as proposed by it. But it is very clear that whatever rights the plaintiff has, so far as the matter at issue in this case is concerned, and assuming that the steps so far taken by him may ripen into an absolute water right, such rights can be held to date only from November 19, 1901. Hence, if it be found that defendant has a prior right, the fact that there is a conflict as to a portion of the lines of the two ditches will not deprive defendant of the right to construct its ditch over that line. It will possess a prior right to the line, and the fact that the point of conflict is located on the land owned by plaintiff can make no difference, in .view of the condemnation proceedings that, under the statute, vested in the defendant "the exclusive right, title and possession" of the tract of land embraced in the right of way. (R. S., Sec. 2084.)

It is an admitted fact in the case that Florence A. Miller

and John Hunton obtained on September 28, 1901, a permit authorizing them to construct the ditch now proposed to be constructed by the defendant company, and that transfers of the right thus secured have been executed and delivered sufficient as between them and the defendant. But the sufficiency of such transfers to confer a right upon defendant superior to the supposed or alleged right of plaintiff is challenged.

The application filed by Florence A. Miller and John Hunton on the 6th of September designated the ditch to be constructed as the "Whalen Falls Canal and Power Company" Ditch, and was recorded in the engineer's office in Book 14 of Applications, on page 147, as shown by endorsements on the back of the application. The source of the proposed appropriation was given as the North Platte River. Upon the application also is noted the various transfers, showing the fact of their having been recorded on the 2d day of December, 1901. The approval and granting of the application is also noted thereon over the signature of the engineer. On the 10th day of November, 1901, Florence A. Miller executed an instrument in writing, her signature being attested by one subscribing witness, purporting "for a valuable consideration" to "transfer, sell, release" to the North Platte Canal and Colonization Company "all my right and title to the appropriation of the Whalen Falls Canal and Power Company, the same being of record in Book 14, page 147, Records of the Applications, in the State Engineer's office in Cheyenne, Wyoming."

October 21, 1901, John Hunton executed in the presence of two subscribing witnesses a written instrument, containing the following words of transfer: "do sell, assign, transfer and set over unto John H. Jones of the City of Chicago, of County of Cook and State of Illinois, all my right, title and interest in and to the Whalen Falls Canal and Power Company water appropriation, granted by the State of Wyoming, on the 28th day of September, 1901, and re-

corded in the office of the State Engineer of the State of Wyoming, on the 6th day of September, 1901, in Book 14 of Applications, on page 147." . The consideration was stated to be $185 and a water right from the ditch for 160 acres of land.

November 15, 1901, said John H. Jones, in the presence of one subscribing witness, executed and delivered to the defendant a similar written instrument, stating: "For and in consideration of the sum of one dollar, and other good and valuable considerations, I do hereby sell, assign, transfer and set over unto the North Platte Canal and Colonization Company all my right," etc., describing the subject of the transfer substantially the same. as in the instrument signed by Hunton, and referring to it as the same interest "conveyed" to the grantor by said Hunton.

These instruments are referred to throughout the record as "assignments," although they are not so designated upon their face, nor by any endorsement thereon. We think that designation is a technical misnomer, if it is intended thereby to indicate that they constitute something less than a deed conveying realty. No prescribed form of words is essential to convey real estate; but the instrument must contain sufficient words to show an intention to convey. (1 Devlin on Deeds, Sec. 211; 9 Ency L. (2d Ed.), 137, 138; 3 Wash. Real Prop., 329.) "Any words in a deed indicating an intention to transfer the estate, interest or claim of the grantor will be sufficient as a conveyance, whether they be such as were generally used in a deed of feoffment, or of bargain and sale, or of release, irrespective of the fact of possession of grantor or grantee, or of the statute of uses." (Field v. Columbet, 4 Sawy., 523.)

In one of the instruments the operative words used are, "transfer, sell, release." In the others, "transfer, sell, assign and set over." These words are sufficient in the case of each instrument to constitute a conveyance. They show an intention to sell and transfer. The words "transfer" and "sell" are employed in each instrument. We think it

clear that the instruments are sufficient and operative to convey the interest and title of the grantors to the water right described. It is, however, contended that they are insufficient to operate as against the plaintiff, for the reason that they were not acknowledged and recorded in the County Clerk's office, and were not recorded in the office of the engineer until after plaintiff had filed his application. Notwithstanding the affirmative provisions of the statute (Secs. 2731, 2741) that conveyance of land, or of any estate or interest therein, may be made by deed, and acknowledged or proved and recorded as directed in the title wherein the provision is found; it is also provided that "every conveyance of real estate . . . . . which shall not be recorded as provided by law, shall be void, as against any subsequent purchaser or purchasers in good faith and for a valuable consideration of the same real estate, or any portion thereof, whose conveyance shall be first duly recorded." (Sec. 2762.) And in the section prescribing the method of conveying homesteads it is expressly provided that unless acknowledged by the wife, if there be any, such deed shall be absolutely void. (Sec. 2770.) But a deed not acknowledged or recorded of property not a homestead is not declared to be void except in Section 2762, and it is there declared to be void only as against certain persons, viz., purchasers in good faith of the same real estate, or any portion thereof, for a valuable consideration, whose conveyance shall be first duly recorded.

With hardly an exception under similar statutes, it is held that neither an acknowledgment of a deed, or its recording, are essential to pass the legal title as between the parties to the instrument. (See Myrick v. McMillan, 13 Wis., 188; Leinenkugel v. Kehl, 73 Wis., 238; Dole v. Thurlow, 12 Metc. (Mass.), 157.) In Sicard v. Davis, 6 Pet., 124, Chief Justice Marshall said: "The acknowledgment, or the proof which may authorize the admission of the deed to record, and the recording thereof, are provisions which the law makes for the security of creditors and pur-

chasers. They are essential to the validity of the deed, as to persons of that description, not as to the grantor. His estate passes out of him and vests in the grantee, so far as respects himself, as entirely, if the deed be in writing, sealed and delivered, as if it be also acknowledged or attested and proved by three subscribing witnesses, and recorded in the proper court." The great weight of authority holds that acknowledgment has reference to the proof of execution, and is required to entitle the instrument to record; but it is not an essential part of the instrument so that its absence will prevent the passing of title, unless the statute has expressly so declared. (1 Ency. L. (2d Ed.), 488, 489, and cases cited.)

Under similar statutes it has been held in Montana in a case where the question is learnedly discussed that a junior appropriator is not a purchaser within the meaning of the statute, and that as to him a deed of a prior water right, though not acknowledged or recorded, is valid. (Middle Creek Ditch Co. v. Henry, 39 Pac., 1054; 15 Mont., 558.) The court in that case refers at some length to the early case of Barclay v. Tieleke, 2 Mont., 59, which had been supposed to declare an unacknowledged deed of a water right to be void; but it is shown that such declaration could not have been intended, and that if it did intend to so declare the case could not be approved in that respect. And the expressions contained in the opinion in the case of Barclay v. Tieleke to the effect that an attempt to convey a water right by an imperfect deed will operate as an abandonment by the grantor, and that the grantee will take the water under a new appropriation dating from his possession, are regarded by the court in Middle Creek Ditch Co. v. Henry as applicable only to cases where the deed is void either as between the parties or as to third persons. And as the court held that the unacknowledged deed was not void as to the junior appropriators, the aforesaid doctrine of Barclay v. Tieleke was deemed to be inapplicable. It is, therefore, clear that the case of Barclay v.

Tieleke cannot now be considered as deciding that a merely imperfect conveyance of a water right operates as an abandonment; and if it was intended to so decide the doctrine has been modified in the later case above cited.

The statutes in the matter of recording conveyances have undoubted reference to the recording of instruments in the office of the County Clerk and ex-officio Register of Deeds. The person protected by the failure to record a prior conveyance is one whose conveyance shall be first duly recorded. It is true that the application of plaintiff was filed with the engineer before the transfers to defendant were filed in that office, but his application was not recorded in the County Clerk's office, nor is there any provision requiring or authorizing its recording in that office. It is doubtful at best if the application can be regarded as a conveyance at all.

Was plaintiff a purchaser of the same real estate, or any portion thereof conveyed to the defendant? He did not buy a water right, nor receive any conveyance thereof, from the grantors of defendant. He applied for a permit to divert the public waters. If the grantors of defendant had anterior to plaintiff's application secured a right to perfect an appropriation, and their transfers of that right to defendant are not void on account of their imperfect execution, but are effectual as between the parties, and their right is not to be considered as abandoned by the transfers, it is difficult to understand how it can reasonably be said that plaintiff, even should he secure a permit under his application, has purchased or obtained any portion of the same right transferred to defendant. That right or appropriation must have reverted to the State before the plaintiff or any other person can secure it, or any interest in it, unless he secures it from or through the parties themselves. Had the plaintiff taken a conveyance from the grantor of defendant and had the same recorded before the recording of the conveyances to defendant, a case for invoking the statute in his favor might have been presented. As it is,

we do not perceive that he is in a position that permits him to question the conveyances to defendant on account of the failure to have their execution acknowledged, even though he should be regarded as a junior appropriator. The water to be appropriated by defendant under the permit to their grantors has been duly conveyed to the defendant. The title to the water right has duly passed to it from the original applicants or appropriators. Plaintiff can acquire an interest only in the use of unappropriated waters. The water remains public, but the right to its use appropriated under the permit to defendant's grantors, until the same may be abandoned or forfeited, is no longer in the State to grant. We fail to perceive upon what theory plaintiff's application, even should it be approved, has any such relation to the subject of the transfers to defendant as to authorize him to challenge their sufficiency as to third persons. So far as he is concerned, as well as the parties thereto, they are valid and effectual.

For the reasons set forth in this opinion, we see no reason for disturbing the judgment of the court. That judgment will be affirmed.                                   *Affirmed.*

CORN, C. J., and KNIGHT, J., concur.