## TOWNE ET AL. v. RUMSEY.

Homestead — Continuance After Loss of Family — Leasing Part.

1.  A homestead exemption is not only for the protection of the family, but for the benefit of the debtor, and can only be divested by the voluntary act of the head of the family, by abandonment, or direct renunciation of the right.

2.  Where the right of homestead is once acquired by the head of a family, and is maintained by occupancy by either the owner or his or her family, the right continues; and is not lost to the owner, after death of his wife, leaving him childless.

3.  It exists during the life of the owner, the head of a family when it was secured, so long as he occupies it, whether he has been deprived of his family by death or by other circumstances.

4.  The leasing of a portion of the premises does not destroy any right of homestead, so long as the owner resides there, and makes it his home, no matter to what circumscribed area therein he limits himself.

[Commenced in District Court July 18, 1891—Decided March 14, 1894.]

Error to District Court for Carbon County. Hon. Jesse Knight, Judge.

Action by James M. Rumsey, Jr., against Marcus M. Towne, John H. Symons and Frank A. Hadsell, sheriff, to enjoin the sale upon execution of certain real estate levied upon as the property of William L. Ash. Judgment for plaintiff. Defendants prosecute error. All the material facts are stated in the opinion.

*John H. Symons,* for plaintiffs in error.

Under the laws of Wyoming the homestead right is a privilege which depends upon the family relation not only for its origin, but for its continued existence; and the death of the wife, there being no children, puts an end to the family

relation, and also the homestead right. (Rev. Stat., Secs. 2780-81; Thompson on H'd Exemp., Sec. 70; Waples on H'd & Exempt., p. 98; Black on Judg., Sec. 425; 1 Freeman on Ex. (2nd ed.), Sec. 240; Revalk v. Kraemer, 8 Cal., 66; Cooper v. Cooper, 24 O. St., 488; Gee v. Moore, 14 Cal., 472; Stewart on Husb. & Wf., 322; Hill v. Franklin, 54 Miss., 632; Calhoun v. Williams, 32 Gratt., 18; Hurt v. Evans, 80 Ga., 330; Hone v. McNeill, 79 Ga., 121; Dismuke v. Eddy, 80 Ga., 289; 1 High on Inj., 378, 440; 1 Woerner on Adm., 195.) The principle of subrogation does not apply as the mortgage debt was extinguished; in the absence of all fraud. (Boone on Real Prop., 136, 140; 4 Waits Act. & Def., 547; Deering v. Earl, &c., 1 Lead. Cas. Eq., 154.)

*McMicken & Blydenburgh*, and *Lacey & Van Devanter*, for defendant in error.

Homestead being once acquired can only be divested by alienation, either voluntary or involuntary—abandonment, or death of each member of the family. For definition of homestead (Waples H'd & Exp., 1; Am. & Eng. Ency. L., Vol. 9, p. 424). How acquired (R. S., Secs. 2780-81). Proceeds of sale exempt (R. S., Sec. 2786). No judgment lien attaches (Black on Judg., 425; Grimes v. Portman, 99 Mo., 229; Ackley v. Chamberlain, 16 Cal., 181). The death of the wife did not destroy it (13 Am. St. R., 116; Bank v. Shelton, 87 Tenn., 393; Taylor v. Bulware, 17 Tex., 575; Wood v. Wheeler, 7 id., 13; Pryor v. Stone, 9 id., 374; Blum v. Gaines, 57 id., 110; Kesler v. Drub, 51 id., 575; Silloway v. Brown, 12 Allen, 30; Barney v. Leeds, 51 N. H., 253; Smith on H'ds, 151, 152; Kimbrel v. Willis, 97 Ill., 495; Beckman v. Meyer, 75 Mo., 333; Meyer v. Ford, 22 Wis., 134; Stanley v. Snyder, 43 Ark., 429; Pierce v. Kusic, 56 Vt., 418; Stultz v. Sale, 92 Ky., 5; Webb v. Cowley, 5 Lea, 722; Pardo v. Bittorf, 48 Mich., 275; Doyle v. Coburn, 6 Allen, 71; Moore v. Parker, 13 S. C., 486; Bradley v. Rodersperger 3 Rich., 226.) Renting a part of a homestead will not be deemed a waiver or abandonment (Bank v. Davenport, 57 Ia., 197; Bradshaw v. Hurt id., 745; Davis v. Kelly, 14 id., 523; Lubbock v. Mc-

Mann, 16 Am. St., 108; Thompson, 273; Tumlinson v. Swinney, 22 Ark., 400; 43 Ark., 429; Stewart v. Brand, 23 Ia., 386; Dunn v. Tozer, 10 Cal., 167; 56 Vt., 418; 12 Neb., 532; 45 Miss., 170; 16 Wis., 157; 12 O. St., 431; 22 Wis., 135; 97 Ill., 495; Griffon v. Nichols, 51 Mich., 575; Earll v. Earll, 60 id., 30; Pardo v. Bittorf, supra; Brown v. Brown, 68 Mo., 388). Rumsey was a bona fide purchaser (Spicers v. Waters, 65 Barb., 227; 12 id., 605; 3 Ill., 499; 76 id., 261). He was entitled to subrogation (Proward v. Hoeg, 15 Fla., 372; 11 Ia., 174; Pierce v. Faunce, 47 Me., 507; Curtis v. Leavitt, 15 N. Y., 9, 195; Ledyard v. Butler, 9 Paige, 132; Murphy v. Briggs, 89 N. Y., 446; Neilson v. Churchill, 16 O. St., 557; Craythorne v. Swinbourne, 14 Ves., 162; Bank v. Winston, 2 Brock, 252; id., 159; Perkins v. Kershaw, 1 Hills Eq., 351; Wiggin v. Dorr, 3 Sumn., 410; Putnam on Prin. & Sur., 113; Cullum v. Emanuel, 1 Ala., 23; 9 id., 463; Bank v. Dixon, 24 Am. Dec., 640; Hayes v. Ward, 8 id., 554; Lowndes v. Chisholm, 16 id., 667; Smith v. Tunno, id., 617; Bunting v. Ricks, 32 id., 699).

GROESBECK, CHIEF JUSTICE.

The facts disclosed by the record are substantially as follows: In 1883 William L. Ash, a married man, became the owner of the premises in question and continued in the ownership thereof until November 19, 1889, when he sold the same to Rumsey, the defendant in error.

Ash was a bona fide resident of Rawlins, Wyoming, the town in which the premises are situate, and, together with his wife, occupied the premises as a home from 1883 until June 22, 1885, when his wife died. After her death, Ash, who had no children then living, continued to live upon the premises until after his sale of the same to Rumsey. During this time he habitually ate and slept at this place, treated it as his home and had no other place of abode. After his wife's death he employed a servant and kept house for some time, then a niece kept house for him, and thereafter other people lived in a portion of the house, under an oral agreement, occupying a part of the house and using a portion of

the furniture and household utensils belonging to Ash, paid him a small rental and boarded him, while he at the same time occupied the remaining part of the house. The value of the house and lot did not exceed $1,500. In May, 1887, Ash mortgaged the property for $1,100, and November 19, 1889, he sold it to Rumsey for $1,500, receiving the excess over the mortgage debt, Rumsey agreeing to discharge the mortgage as a part of the consideration, and paying to the mortgagee the full amount thereof, the mortgage being discharged of record. The conveyance of Ash to Rumsey was by sufficient deed with full covenants of warranty and was properly recorded. In May, 1888, Towne and Symons obtained a judgment against Ash in the district court for Carbon county for $631.28, and at the commencement of the suit of Rumsey the case at bar, were proceeding to sell, and were about to sell the premises in question upon an execution, then in the hands of the sheriff issued on the judgment. Rumsey had no actual knowledge of the judgment until the issuance of the execution thereon in June, 1891, and purchased the property and paid the mortgage and made permanent improvements on the property in actual ignorance of the judgment. The trial court held that the property was the homestead of Ash and was exempt from sale upon execution for his debts, and that Ash, having continued to reside thereon until after the sale to Rumsey, the property had not lost its homestead character by the death of the wife, and that Rumsey took the same free from any lien by reason of the judgment against Ash, and a decree was entered perpetually enjoining the sale. The trial court further held that even if the judgment were a lien upon the premises, Rumsey would be entitled as against the defendants to be subrogated to the rights of the mortgagee against the property. The defendant's motion for a new trial on the ground that the findings of fact were not sustained by the evidence and that the court erred in its conclusions of law was overruled and they institute proceedings in error in this court.

A homestead is acquired under the provisions of Sec. 2780 of the Revised Statutes: "Every householder  *   *   *   *   *

being the head of a family, shall be entitled to a homestead, not exceeding in value the sum of fifteen hundred dollars, exempt from execution and attachment arising from any debt, contract or civil obligation entered into or incurred." The duration of this exemption is covered by Sec. 2781: "Such homestead shall only be exempt, as provided in the last preceding section, while occupied as such by the owner thereof or the person entitled thereto, or his or her family." The status of the homestead upon the death of the owner is regulated by Sec. 2782, which reads: "When any person dies seized of a homestead, leaving a widow or husband or minor children, such widow or husband or minor children shall be entitled to the homestead, but in case there is neither widow, husband or minor children, the homestead shall be liable for the debts of the deceased." The right to alienate the homestead is limited by Sec. 2784: "Every owner or occupant of a homestead as established herein, may voluntarily sell, mortgage or otherwise dispose of or incumber the same; Provided, That every such sale, mortgage, disposal or incumbrance shall be absolutely void, unless the wife of the owner or occupant of such homestead, if he have any, shall, separate and apart from her said husband, freely and voluntarily sign and acknowledge the instrument of writing, conveying, mortgaging, disposing of, or incumbering such homestead, and the officer taking such acknowledgment shall fully apprise her of her right and the effect of signing and acknowledging such instrument." The proceeds arising from the sale of a homestead not exceeding fifteen hundred dollars are exempt, and any subsequent homestead acquired by such proceeds is also exempt and no judgment or other claim against the owner of the homestead is a lien against the same in the hands of a bona fide purchaser for a valuable consideration. Sec. 2786, Rev. St.

These statutory provisions relating to the acquisition, duration, disposal and alienation of a homestead plainly point to the legislative intent that the exemption is not only for the protection of the family but for the benefit of the debtor. The right can only be acquired by the head of a family, and the continuance of the right is dependent upon the occupancy of

the homestead by the owner thereof or the person entitled thereto, or his other family. The continuance of the homestead exemption does not rest under our statute upon the occupancy of the homestead by the owner and his family jointly, but the conditions imposed by the law as an immunity from seizure and sale under legal process of the homestead is that of occupancy by the owner or the family.

In the case at bar, the occupancy of Ash and his wife of the homestead premises was continuous until her death, and his occupancy was continuous up to the time of the sale to Rumsey. The evidence is undisputed that he treated his homestead as his home, and that he had no other place of abode. The leasing of a portion of the premises did not destroy any right of homestead therein that he possessed so long as he resided there and made it his home, no matter to what circumscribed area therein he limited himself, and we do not think this contention of sufficient importance to consider. It has been held that a temporary leasing of the entire homestead is not a renunciation of the homestead right. Waples on Homestead and Exemption, p. 572. However this may be, surely it can not be doubted that a rental of any portion of the premises by the homestead claimant for the purpose of eking out an existence is not fatal to the right.

The serious question in the case is whether or not the right of homestead continued after the death of the wife to the childless widower, and upon this proposition, although the weight of authority is in favor of the continuance of the right to the surviving owner who is no longer the head of a family, there are many well written and well considered opinions to the contrary. The Supreme Court of Arkansas "interpreting the law according to its spirit and following the current adjudications" held with some hesitation that when the association of persons, which constitute the family, is broken up, whether by separation or the death of some of its members, the right of homestead continues in the former head of the family, provided he resides at his old home. Stanley v. Snyder, 43 Ark., 429. So also is the decision of the Supreme Court of Illinois under enactments similar to our statutes. Kimbrel

v. Willis, 97 Ill., 494. While admitting that there was much force in the observation that the homestead act has respect to the family of the debtor, and is for its benefit, and that in any case where this family relation is not found to exist, the homestead exemption does not subsist, there being then no cause for the application of the law, yet, the court held that looking at another section of the act, providing that upon the death of the original owner of the homestead, the exemption shall continue after the death for the benefit of the surviving spouse, so long as he or she continues to occupy the homestead, that the original owner, the meritorious cause of the exemption must be regarded with equal favor as the survivor of such an one after his death. The court ask this pertinent question: "If, then, the homestead exemption may continue in such surviving husband or wife so long as he or she continues to occupy the homestead, without the condition of being a householder having a family, why, in the case of the original owner of the homestead before his death, after the homestead estate has been once vested in him, should not the homestead exemption continue for him so long as he occupies the homestead premises, although he may have ceased to be a householder having a family?" To the same effect is the opinion of the Supreme Court of Kentucky in Stults v. Sale, 92 Ky., 5. The right was held to continue as the debtor had done nothing to release or forfeit the right, and he therefore could not be deprived of the right by the loss of his family by misfortune. We think our statute construed as it must be so as to render every part of it effective, bestows the homestead right to the debtor as well as to his family, and where once this right is acquired by the head of a family and is maintained by occupancy of the exempted homestead by either the owner or his or her family, the right continues. In other words, the homestead exemption can only be divested by the voluntary act of the head of the family by abandonment or direct renunciation of the right. The right exists to the surviving spouse of the owner after his or her death, and such a survivor may be a childless widow or a childless widower, and there being in that case no family and consequently no head of a family upon

whom the original right of homestead is conferred, it must be held that the right once acquired is not lost to the survivor because there is no family to protect or in need of the shelter and sanctuary of the home. The continuance of the right then is not dependent upon the continuance of family relations, and this being so, it must be conceded that the right once acquired by the head of a family may continue after his family relations are dissolved. So the right exists also during the life of the owner, the head of a family at the time the right accrued, so long as he occupies the homestead, whether he has been deprived of his family by death or by other circumstances.

It is unnecessary to consider the other question involved in this case, that of subrogating Rumsey the purchaser of the homestead to the rights of the mortgagee thereof. It seems that Rumsey would be subrogated to the rights of such a lienee, having paid his money in an honest endeavor to remove all incumbrances upon the property. The amount of the lien so discharged with interest at the legal rate since the date of its satisfaction would amount to more than the value of the premises at the time of the sale, as shown by the evidence. However, it is not our purpose to treat of this question further, as it follows that the homestead right of William L. Ash, the grantor of the defendant in error, accrued in the premises while he was a married man, and continued therein after the death of his wife, and that the premises were never for that reason subject to the judgment lien of the plaintiffs in error. The judgment of the district court of Carbon County will be affirmed.

The other justices concur.