Aurilla P. Condict, as Executrix of the Estate of W. C. Condict, Deceased; Aurilla P. Condict, Maysel H. Condict, Winthrop C. Condict, Jr., and Alden Revelle Condict, as residuary devisees and legatees of Winthrop C. Condict, Deceased; State Board of Control of the State of Wyoming; and L. C. Bishop, as State Engineer,

*Appellants,*

(Defendants below)

vs.

Cecil A. Ryan,

*Appellee,*

(Plaintiff below)

(No. 2827; December 16th, 1958; 333 Pac. (2d) 684)

For the appellants, the cause was submitted upon the brief of Greenwood, Ferrall & Bloomfield of Cheyenne, Wyoming, and oral argument by Mr. James A. Greenwood.

For the appellee, the cause was submitted upon the brief of Brimmer & Brimmer of Rawlins, Wyoming, and oral argument by Mr. Clarence A. Brimmer, Jr.

Heard before Blume, C. J. and Harnsberger and Parker, JJ.

214

## OPINION

Mr. Justice HARNSBERGER delivered the opinion of the court.

Plaintiff Cecil A. Ryan sought adjudication that he is the sole owner of a reservoir, entitled to the exclusive right to use and control the waters impounded therein and to enjoin State authorities from allocating or distributing any of the reservoir waters to others.

The court tried the case without jury and determined plaintiff was the sole owner; entitled to the exclusive possession of the reservoir and the permit under which it was constructed, together with the appropriations of waters made and impounded thereunder; enjoined the State officers from allocating the impounded waters to any others and gave judgment accordingly, with costs against defendants, who now appeal from the same.

The parties appealing will be referred to collectively as defendant, appellant or as appellant Condict.

The evidence shows that on August 26, 1910, Edwin E. Ryan and Cecil A. Ryan, brothers, filed application with the State Engineer for a permit to build a reservoir to store unappropriated waters of the State and specified therein, "The use to which the water is to be applied is a supplemental supply to the Ryan-Foreman Ditch", as this information was required by § 743, W. C.S. 1910.

On July 7, 1911, the application was granted as Permit #2134, and the State Engineer endorsed at the end of the original application his certificate reading in part as follows:

"This is to certify that I have examined the foregoing application and do hereby grant the same subject to the following limitations and conditions: Primary Permit, See Secondary Permit #8112. #See above."

Permit #8112, dated January 14, 1908, was appended to an "Application for a Permit to Divert and Appropriate the Water of the State of Wyoming" made by Edwin E. Ryan and Daniel M. Foreman, and in that application it is stated, "The land to be irrigated has a total area of 617 acres, described as follows: * * *". The descriptions of the lands following show 272 acres which belonged to Edwin E. Ryan, 38 acres which belonged to Cecil A. Ryan, 197 acres which belonged to Daniel M. Foreman, and 110 acres which belonged to D. M. Foreman.

The engineer's endorsement on Permit #2134 also specified a completion date December 31, 1913, but thereafter it appears that date was extended several times to the final date of December 31, 1925. On December 17, 1925, a letter from the State Engineer acknowledges receipt from the plaintiff of a notice of completion of the reservoir "under the conditions

of Permit No. 2134 Res." After the reservoir permit was granted, some preliminary work on the reservoir was done by plaintiff and his brother Edwin E. Ryan, the exact nature and extent of which is not entirely clear from the evidence, although it seems evident they did some surveying, calipering trees around the reservoir that the water would kill, dug a small trench where the natural creek came out, and laid a 10 inch pipe in the trench and put a concrete head on it that remained a part of the completed dam. The balance of the dam construction work was not done until the summer and fall of either 1924 or 1925.

The plaintiff seems to agree that the reservoir was then owned one-half by his brother Edwin and one-half by himself, as that was his repeated testimony.

The "Proof of Construction of Reservoir", signed by plaintiff, was not filed with the State Engineer until July 27, 1954. That document stated the construction of the reservoir was begun prior to July 7, 1912, and was completed October 29, 1924, although plaintiff testified that the completion date was a mistake as the reservoir was completed in 1925. Except for the preliminary work already mentioned it is not shown that Edwin E. Ryan participated in any subsequent work on the reservoir. The first water was impounded and stored in the reservoir for irrigation purposes in the year 1926.

Commencing in 1916, Edwin E. Ryan and his wife executed a series of mortgages on his ranch lands, some of which included the lands described in Permit #8112. These mortgages were given either to the defendant Winthrop Condict, or to his predecessors in interest. The final mortgage dated March 30, 1920, was upon 480 acres of land and included all of the lands previously mortgaged.

These mortgages were foreclosed by court decree dated June 3, 1926, and a sale of the mortgaged properties was ordered. In none of the mortgages foreclosed, or in the order confirming sale of the Ryan lands to Condict was the word "appurtenant" used in the covering phrases referring to laterals, water, water rights, ditches or ditch rights which followed the legal description given, although certain of such references used the word or words: "appertainant", "appertaining or belonging to", "belonging into", "being used upon", and "in anywise appertainant". The sheriff's deed dated February 4, 1927, however, used the words "appertaining to". Nowhere in any of the instruments or order is the reservoir or its impounded waters mentioned. We attach no special significance to the failure to use the word "appurtenant" except that the absence of its use forestalls any conclusion being based upon it. It, therefore, follows that we should look to the facts and circumstances surrounding the pledging of the property as security for the money debt to determine what properties were intended by the parties to be hypothecated.

On July 27, 1927, the State Engineer received an instrument entitled, "Assignment of Permit", wherein over the signature "Edwin E. Ryan" it is stated that Edwin E. Ryan being a co-owner of the reservoir in question in consideration of one dollar and other valuable consideration transfers and assigns all his right, title and interest of whatsoever nature to the reservoir and all irrigation works pertaining thereto to Cecil A. Ryan. At the end of this instrument there appears what might have been intended as an acknowledgement, but it does not name any person as having appeared before the officer taking the same and is, therefore, of doubtful sufficiency, although the "Assignment" was recorded in the office of the local coun-

ty clerk on January 18, 1927, and is marked as filed in the office of the State Engineer on July 28, 1927.

It would seem that the defective acknowledgement rendered the instrument ineffective as constructive notice of its contents to anyone other than the assignor and the assignee, notwithstanding the fact that it was so recorded, if the rule laid down in Frank v. Hicks, 4 Wyo. 502, 513, 35 P. 475, 477, is to be followed. There the court speaking of the informality of execution of a deed and its defective acknowledgement, said:

"The trust deed in question was defectively executed, and was not entitled to record. Although recorded, the record was not constructive notice to any one of its contents. It is not a legal mortgage, but is effective between the parties as an equitable mortgage.* * *"

This rule would seem to make the Ryan assignment in this case ineffective as against the intervening right the appellant acquired by his application to beneficial use of the reservoir waters upon his lands, as the appellant was without notice that any adverse right to the use of those waters was being asserted. The appellant was consequently left free to perfect his right to their use upon his lands. This he did and thereby the waters became appurtenant to those lands, and this appurtenance anteceded any right which Cecil A. Ryan may have by virtue of the attempted assignment from his brother.

But there is an even more important reason to question the judgment as will appear by that which is hereinafter discussed.

On July 28, 1927, the State Engineer directed that "regardless of the fact that a deed was issued transferring this right [to waters from the reservoir con-

structed under Permit #2134 Res.] to some other person, which deed is in conflict with the Sheriff's deed, which transfers this property to the Condicts", the waters from the reservoir be regulated to the lands they were originally intended to cover.

On May 12, 1955, the State Board of Control of the State of Wyoming ordered:

"IN THE MATTER of the contest of the Winthrop Condict Estate against allowance of the proof of construction submitted by Cecil A. Ryan for construction of the Ryan Bros. Lake Reservoir [the reservoir in question] on North Twin Lake, tributary of North Twin Lake Creek, tributary of South Brush Creek, under Permit 2134 Res., with priority of August 26, 1910, the proof of construction under Permit 2134 Res. be accepted and that the issuance of a Certificate of Construction be withheld until the ownership of the Ryan Bros. Lake Reservoir is determined by a Court of competent jurisdiction;

"THAT in the interim, the Water Commissioner shall continue to divide the water stored in said reservoir on a fifty-fifty basis to Cecil A. Ryan and the Winthrop Condict Estate, as he has done heretofore;"

On appeal to the district court from this order that court on June 8, 1956, ordered the Board of Control to "issue its Certificate of Construction under the application for Permit 2134, Reservoir, to construct 'Ryan Bros. Lake Reservoir' in the names of Edwin E. Ryan and Cecil A. Ryan", without prejudice to the "claim of any person or party to use water stored in the reservoir covered by the Certificate".

In the main, the trial court's findings of fact conform to the evidence here recounted, although its statement that "There is some evidence that the land was irrigated to some extent that year by Mr. Condict,

but the court finds that no impounded water from the reservoir was applied to a beneficial use on the Edwin E. Ryan Ranch until on or after July 28, 1927" is open to inquiry. The year referred to in the quoted testimony was the year 1926. Upon examination of the record, we find that the plaintiff, while testifying as to the time when reservoir water was first used by Condict on the Edwin E. Ryan ranch lands, said, "Well, I've told you it is '26".

Having made these findings, the court concluded as a matter of law:

"* * * that reservoir permit No. 2134 was a personal right vested in the applicant and could not become appurtenant to any lands until after the reservoir was constructed and the water therefrom applied to a beneficial use on such lands regardless of date of priority. (See Weil on Water Rights 3rd Ed. Sec. 393 and 394)"

And the court found the instant case to be distinguishable from Sturgeon v. Brooks, 73 Wyo. 436, 281 P.2d 675, because in the Sturgeon case the reservoir had been completed under primary permit and the water applied to beneficial use and a certificate of appropriation under secondary permit obtained as then provided by statute, citing § 744, W.C.S. 1910.

It is, of course, clear that at the time application for permit to construct the reservoir was made Chapter 59, W.C.S. 1910, was in force and governed the procedures to obtain reservoir permits. Section 744 of that chapter provides:

"All applications under this chapter shall be subject to the provisions of §§ 728 to 737 inclusive, and §§ 825, 826, 827, which set forth the duties and authority of the state engineer and provide for the protection of

the rights of applicants; Provided, That an enumeration of any lands proposed to be irrigated under this chapter shall not be required in the primary permit. The party or parties proposing to apply to a beneficial use the water stored in any such reservoir shall file with the state engineer an application for permit, to be known herein as the secondary permit, in compliance with the provisions of §§ 727 to 737 inclusive. Said application shall refer to such reservoir for a supply of water and the state engineer shall not approve the said application and issue secondary permit until the applicant thereunder shall show to such state engineer by documentary evidence that he had entered into an agreement with the owners of the reservoir for a permanent and sufficient interest in said reservoir to impound enough water for the purposes set forth in said application. When beneficial use has been completed and perfected under the said secondary permit the division superintendent shall take the proof of the water user under such permit and the final certificate of appropriation shall refer to both the ditch described in the secondary permit and the reservoir described in the primary permit."

The § 728 referred to requires that "In case the proposed right of use is for agricultural purposes, the application shall give the legal subdivisions of land proposed to be irrigated, with the total acreage to be reclaimed, as near as may be", and §§ 728 to 737 concern the duties of the State Engineer where water rights are applied for; the approval of applications and their endorsement thereon; the additional information to be furnished; the time for completing proposed irrigation work; appeals; maps to be filed; the Engineer's examination of the same and requirements for additional description and plans. Sections 825, 826 and 827 refer to plans for dams, authority for Engineer to inspect and requests for inspection. The third sentence of § 744 has reference to instances where the reservoir is owned by a different party than

the one applying for use of impounded water, and has no bearing upon matters involved in this litigation.

Section 744, supra, is the only statute relative to reservoirs in which we find reference being made to "primary" and "secondary" permits. A careful reading of all the statutes which we mention here convinces that the primary permit contemplates the authority from the State to construct a reservoir, while a secondary permit is the State's authority to appropriate the impounded waters in a reservoir to beneficial use.

While an applicant to use direct flow waters is required to describe the lands whereon the waters are to be used, § 744, supra, expressly relieves a reservoir applicant from enumeration of any lands proposed to be irrigated from the impounded reservoir waters. In consequence, the application for primary permit to construct the reservoir, made on the form prescribed by the State Engineer (§728, W.C.S. 1910), did not set forth the lands to be irrigated from waters which would be impounded in the reservoir. However, when the application for that primary permit was considered, it was granted subject to an express condition. The words used in that condition, "See Secondary Permit ♯8112, ♯See above", can have but one meaning. Bearing in mind that a secondary permit is the authority from the State to the applicant to appropriate the waters impounded in the reservoir, the reference "See Secondary Permit ♯8112" undoubtedly meant that the impounded waters were to be used only as provided for use of waters under Permit ♯8112, and the further reference "♯See above" plainly meant that the impounded waters were to be applied to beneficial use on the lands described in Permit ♯8112 as a supplemental supply to the waters previously appropriated by it, at least insofar as the lands of the permittees

under Permit #2134, the owners of the reservoir, were concerned. That this is the interpretation of the condition which was given by the same State authority which imposed that condition is made evident in the letter of the State Engineer to the water commissioner, dated July 28, 1927, in which it was directed, "You will therefore proceed to regulate the water from this reservoir to the lands that it was originally intended to cover." The equal apportionment of the reservoir's waters was obviously taken to be governed by the fact that the original application for the reservoir permit was made in the names of the two brothers without anything said to show the extent of interest which each would have in the reservoir. The permit being granted upon that application and nothing contrary appearing, their co-ownership implied the interest of each was equal to the other. This was acknowledged to be the fact by the testimony of Cecil A. Ryan, the plaintiff.

When the conditions under which Primary Permit #2134 was granted are given these meanings, they have the effect of making that permit the State's authorization to appropriate the reservoir waters in supplement of the waters appropriated under Permit #8112. In other words for all practical purposes, the grant became a secondary permit for appropriation of reservoir waters for beneficial application on lands described in Permit #8112, as well as being a primary permit to construct the reservoir where such waters were to be impounded. The condition of the grant also served to limit the use of the waters to beneficial application upon the identical lands for which waters under Permit #8112 had been previously authorized and appropriated, and the condition made the reservoir waters a supplemental supply of water for the irrigation of those lands only and none other.

We can agree with the trial court's conclusion of law that water does not ordinarily become appurtenant to particular land until after its application to beneficial use upon that land, but when a permit to construct a reservoir is granted upon condition that the impounded water is to be used upon particular lands, the right to the use of those waters is not a mere personal right, but is a right running with the land and it passes with a conveyance of the land even in the absence of special mention.

An interesting sidelight arising in this litigation is disclosed when we analyze the plaintiff's position with respect to the reservoir waters. The record does not show that plaintiff has ever made a separate application for a secondary permit to apply those waters to beneficial use and there has been no secondary permit granted him for that purpose unless it be by virtue of the condition imposed in the grant of the primary permit. It follows that plaintiff's only claim to use of the reservoir waters must, therefore, stem from the identical authority under which defendant's right to the use of the waters arises.

All litigation concerning use of the waters of this State are of utmost importance and the evidence submitted to us has received the closest examination of which we are capable, keeping in mind the previous pronouncements of this court. In doing so, we have been impressed by the philosophies expressed in Frank v. Hicks, supra. While the water-right question in that case is not parallel to that now before us, inasmuch as it concerned direct flow rights as opposed to rights to storage waters, still what was said there with respect to appurtenant and appurtenance is informative and somewhat helpful here. For instance in 4 Wyo. at pages 521, 522, 35 P. at page 480, it pointed out:

"* * * Upon the question whether a right to the use of water for the purpose of irrigation, together with the necessary conduit for conducting the water to the place where it is used, is appurtenant to the land irrigated or not, the courts of the states and territories in which irrigation is practiced are not in entire harmony. But this statement of the question is too narrow to meet the conditions of the case at bar. The discussion should not be confined to the meaning or proper use of the word 'appurtenant' or 'appurtenance'. The real question is one of vastly more importance than a mere question of the proper use of words. It is, substantially, whether a right to the use of water for the irrigation of land, together with the ditch making such right available, *becomes in any way* so attached to the land irrigated as to pass by a conveyance of the land without mentioning the water right, and to *become subject to the liens and liabilities which attach to the land,* and entitled to the exemptions to which the land is entitled.* * *" (Emphasis supplied.)

Having so directly posed the question as to what should be considered in determining whether rights to water should pass under conveyance of the land alone without mention of water rights the court observed in 4 Wyo. at page 524, 35 P. at page 481:

"* * * We cannot ignore, as judges, what we know, as men, of the general condition of the country. As residents of the arid region, interested in its business conditions, we know—and as lawyers and judges, deriving our knowledge from reported cases, we know—that there are vast quantities of agricultural land cultivated in the arid region, and made valuable by the use of water, the right to which depends upon a conveyance of the land without mentioning water, water right, or irrigating ditch. Land and water together are of great value. The value of the land without the use of the water is trivial. And the conditions are such, in many instances, that, if the owner of the land is deprived of the use of the water to which he has

been accustomed, he cannot procure other water. In other instances it can be done only at great expense. * * *"

Can it be said that these expressions are any less applicable in the instant case? The water from the reservoir to be constructed under Primary Permit #2134 was intended to be used as a supplemental supply to waters already appropriated for the benefit of the lands of the applicants and to make those lands of greater value than they were when in an insufficiently watered or partially unreclaimed condition and also to insure that those same lands be not left unwatered in years of drought.

In its entirety the record leaves us without any doubt that both parties to the application for a reservoir permit intended and expected it would be for the benefit of the lands they then owned. There is nothing to indicate that Edwin E. Ryan had any other idea about the reservoir when he needed money and mortgaged his holdings to secure the repayment of his borrowings. It was not until his mortgages were foreclosed and his properties sold to satisfy his debt that he moved to carve away a portion of that which he had pledged and reduce the value of the security which the Condict interests undoubtedly felt was good security for their loans.

Because of what has been said, we conclude that a one-half interest in the reservoir, together with the right to beneficially use one-half of the waters impounded therein upon the Edwin E. Ryan lands described in Permit #8112, was the property of Edwin E. Ryan at the time he and his wife mortgaged said lands to the defendant Condict or his predecessors in interest; that by virtue of the foreclosure of the mortgages given to secure the payment of monies loaned to Ed-

win E. Ryan, and the sheriff's deed to defendant Winthrop Condict pursuant thereto, the defendant Winthrop Condict became the owner of the lands described in said deed and of a one-half interest in the reservoir constructed under Primary Permit #2134 granted by the State Engineer of the State of Wyoming July 7, 1911, and of the right to use one-half of the waters lawfully impounded and stored, or to be lawfully impounded and stored in such reservoir, in beneficial application upon the Southeast Quarter of Section Fifteen, the Southwest Quarter of the Southwest Quarter of Section Fourteen, the Northeast Quarter of the Northeast Quarter of Section Twenty-two and the Northwest Quarter of the Northwest Quarter of Section Twenty-three, all in Township Sixteen, North of Range Eighty-three, West of the 6th Principal Meridian, Wyoming; and that the title of defendant Condict to said lands, reservoir and water rights anteceded and was superior to any rights under the attempted assignment and transfer by Edwin E. Ryan to Cecil A. Ryan of a one-half interest in the reservoir and rights to waters therein impounded.

The decision thus reached requires attention to the alternative question of the plaintiff's right to contribution from the defendant-appellee for a portion of the cost of the reservoir. This matter, unnecessary under the trial court's judgment, is now restored as an issue and the trial court must now pass upon the question.

The judgment appealed from herein is, therefore, reversed with direction that a judgment in accordance herewith be entered; that the trial court proceed to ascertain what, if any, contribution should be required from the defendant to the plaintiff by reason of the costs incurred in the construction of the reservoir and

that such allowance, if any be made, shall be included in the judgment hereby directed to be entered.

Reversed and remanded with directions.

ON PETITION FOR REHEARING

(No. 2827; March 3rd, 1959; 335 Pac. (2d) 792)

In support of the petition for rehearing, there was a brief for appellee by C. A. Brimmer, Jr. of Rawlins, Wyoming, and Frank J. Trelease of Laramie, Wyoming.

Heard before Blume, C. J. and Parker and Harnsberger, JJ.

## OPINION

Mr. Justice HARNSBERGER delivered the opinion of the court.

Appellee's petition for rehearing is advanced upon several grounds. It is said we did not mention and failed to apply § 71-613, W.C.S. 1945. This law only became effective February 23, 1921, some five years after the mortgages whose foreclosure gave Condicts title to both lands and reservoir. Although the statute and its application was fully discussed in both brief and argument, it was not deemed necessary to especially mention it when it was decided that by virtue of the condition appended to the permit to construct the reservoir both the reservoir and the waters to be therein impounded were identified with and were appurtenant to the Edwin Ryan lands at the time the mortgages were given in 1916. In consequence, all provisions of the 1921 statute were ineffective as to this question.

The petitioner also claims the interpretation which we gave to the words imposing the condition upon the permit to construct the reservoir was upon an initial theory not theretofore advanced. The suggestion is somewhat novel when the record shows that the very instrument wherein the condition appears was introduced as a joint exhibit by the contesting parties and was mentioned in the trial court's findings. It was evidence in the case but because of its nature it required an interpretation of its meaning. Although neither side saw fit to assist us in that effort, the court was not disposed to blind itself to what was apparent from that instrument or to give it the meaning which to us seemed obvious.

Petitioner claims the right to show the purported assignment of July 27, 1927, from Edwin Ryan to his brother Cecil was not defective and that the outcome of the appeal should not depend on notice of such purported assignment being given to Condict. Section 4

of Ch. 141, S. L. of Wyoming, 1921, now § 71-615, W.C.S. 1945, was in effect on July 27, 1927, and provides:

"All deeds for reservoir water and water rights and all leases of the same for periods of three (3) years or more shall be executed and acknowledged as deeds are executed, and shall be recorded in the office of the County Clerk of the County in which the reservoir is situated and also filed in the office of the State Engineer.* * *"

This statute was violated as the instrument was not executed and acknowledged as deeds are executed and acknowledged. In the light of Frank v. Hicks, 4 Wyo. 502, 35 P. 475, as quoted in the original opinion, it was, therefore, not effective as notice even though it had been filed with the state engineer and erroneously recorded in a county clerk's office. It should be unnecessary to say that at least one primary purpose of such recording was the giving of notice to all the world, including those whose interest in the subject matter of the instrument would be adversely affected. Nor does the fact that the instrument was received in evidence without objection add to its efficacy. It merely spoke for itself but without probative effect. We do not find petitioner's contention that Condict had actual notice of the attempted assignment prior to his application of the reservoir waters to beneficial use upon his lands to be borne out by the record to which reference is made.

Petitioner argues convincingly and at some length that under the circumstances present in this case there was no necessity to follow the procedures outlined in the then applicable statute, § 744, W.C.S. 1910, as the owners of the reservoir and the persons intending to use its impounded waters were the same and they,

therefore, did not need the protection which that statute intended to give in cases where the holders of primary and secondary permits were different people. And we can agree when petitioner concludes that the statute is not mandatory, but permissive only. However, there was no debatable question presented in this law suit of whether there was or was not a secondary permit granted. The decisive point was the appurtenance of the reservoir and its waters to the Edwin Ryan lands at the time they were mortgaged. The importance of the conditioning words in their relation to that point was that they identified the reservoir and its impounded waters with the same lands as those described in Permit No. 8112, the direct flow permit. In so deciding it was pointed out that the use of such impounded waters was limited to beneficial application on those described lands and none other, and it was observed that for all practical purposes this became a secondary permit for appropriation of reservoir waters. It was not said that such a secondary permit was necessary or that any substitute therefor was required.

The final point which we consider merits comment is that we failed to follow our rule of assuming as true the evidence of the successful party and leaving out of consideration the evidence of the opposing party. This charge seems to center around our failure to accept Cecil Ryan's unexplained statement that the application for Permit No. 2134 was "worded wrong". Just what the testimony meant is not explained. On the other hand, the application itself was in evidence and presented no ambiguity requiring explanation. While the petition has separately set forth under eight headings the grounds relied upon in seeking rehearing, the supporting brief covers only the points here considered, and we, therefore, must assume that all

other contentions have been abandoned. Under these circumstances the rule contended for has no application.

REHEARING DENIED.

Mr. Justice PARKER, believing that the application raises questions which should be resolved only after a consideration of the views and arguments of counsel, would grant a rehearing.