A. E. KING, Commissioner of Public Lands, State of Wyoming, Appellant (Appellee and Contestee below),

State Land Board, State of Wyoming, (Appellee and Contestee below),

v.

Bryan WHITE and Frances H. White, Appellees (Appellants and Contestants below).

No. 4043.

Supreme Court of Wyoming.

July 21, 1972.

Jack R. Gage of Hanes, Carmichael, Johnson & Gage, Cheyenne, for appellant.

John A. MacPherson and T. Michael Golden, of Brimmer, MacPherson & Golden, Rawlins, Bard Ferrall, Cheyenne, for appellees.

Before McINTYRE, C. J., and PARKER, McEWAN and GUTHRIE, JJ.

Mr. Justice GUTHRIE delivered the opinion of the court.

This is an appeal from the judgment of the District Court of Carbon County reversing a decision of the State Land Board. This being an appeal from an administrative ruling, it must be considered in that context to be controlled by the provisions of the Administrative Procedure Act (§§ 9–276.19 to 9–276.33, W.S. 1957, 1971 Cum.Supp.) so that an examination will be made to determine whether the agency acted in excess of its powers, in conformity with law, and whether the findings are supported by substantial evidence (§ 9–276.32(c), W.S.1957, 1971 Cum.Supp.). The decision of the State Land Board from which an appeal was taken to the district court is as follows:

"The water rights appurtenant to this land are to be sold with the land. All proceeds derived from the sale of this land and the water rights appurtenant thereto shall be paid to the State Treasurer as is provided by law."

Because of the coincidence of similar names, Mr. A. E. "Bert" King, Commissioner of Public Lands, will be referred to as the Commissioner or the State. Mr. Herbert King, who was a former lessee of these premises and the assignor of White, will be referred to as King, and the Whites will be referred to as White.

King was the lessee of the following described school lands:

Section 36, T. 19 N., R. 78 W., 6th P.M., Carbon County, Wyoming.

He secured his first lease thereon in 1901. In 1908, after a renewal of this lease, King perfected two direct-flow irrigation rights on these lands with a priority date of February 14, 1908. Thereafter King secured a supplemental direct-flow water right from Rock Creek with a priority of July 12, 1921. In 1957 King assigned to White his lease on the above-described land, there being a two-year remaining term upon his lease. In 1959 White secured a ten-year lease on these premises, and upon the expiration thereof the State Land Board decided to sell these lands. At that time the Commissioner advised White the sale of Section 36 included water rights and that the purchaser would have to pay the State for these rights. White asserted a claim to the water rights and that he should be paid the appraised value of the water rights when this section was sold.

White's claim that he is the owner of these water rights and entitled to this payment is based upon the following assignment:

"I, Herbert King * * * do hereby sell, assign, transfer and set over unto Bryan White and Frances H. White, husband and wife as tenants by entirety, of Rock River, Wyoming, all my right, title and interest in and to said lease together with all buildings, and improvements of every kind or character situate thereon or appurtenant thereto."

He contends this assignment vested ownership of these water rights in him and that he is entitled to this payment pursuant to § 36–184, W.S.1957, which contains the following:

"* * * The purchaser of said lands, upon which improvements and irrigation works have been made, or for which water rights have been acquired as herein provided for, *shall pay the owner* of such improvements, irrigation works or water rights, as the case may be, the appraised value thereof, and take a receipt

therefor, and shall deliver the same to the commissioner of public lands before he shall receive a patent or certificate of purchase. * * *" (Emphasis supplied.)

We recognize the value that water rights have to lands in this state and the rights of many people are affected thereby, and because of this we deem it both necessary and proper to confine our discussion in this case solely to what is the decisive question so that confusion or misunderstanding may be avoided.

The trial court relied upon and appellee contends that under the rule in the case of State ex rel. Marble v. Carey, 26 Wyo. 300, 183 P. 785, this result is dictated and that he is entitled to have and receive the appraised value of these water rights as the lessee. Because of the factual situation therein the Carey case is not controlling and in our view must be strictly confined to that factual situation.

An examination of the record reveals that the Swan Land & Cattle Company and Home Irrigation Company, which was a corporation owned and used by Swan holding certain properties including water rights, had secured these rights in 1876, 1885, and 1886. There was at these dates of priority no provision or requirement in our laws for any written application or filing in 1876 but only an entitlement to use water from any stream (Ch. 65, C.L.1876). In 1886 the statute was enacted providing a procedure for the filing of statements of existing water rights and recording the same, and procedure was set out for filing and securing a water right and securing an adjudication of the priority in the district court (§§ 1340, 1341, 1343, and 1345, R.S. 1887). In none of these enactments was a description or plat required of the lands upon which the water was to be used. The only requirement therein as to the place was that the location of the headgate be given. The first requirement that the application for filing of a water right contain a description of the land appears in § 34,

Ch. 8, S.L. of Wyoming, 1890, along with a provision requiring that the applicant provide the State Engineer with a map or plat of the lands by subdivision where the water was to be used (§ 35, supra). Thus the rights secured and owned by Swan and Home Irrigation were totally distinguishable from the rights herein involved, and from the record there would have been no way of definite determination upon what lands the water secured by these rights was to be used. The ownership of these rights was clear and undisputed, having originated with Swan and Home Irrigation. These facts make the Carey case completely distinguishable and White's reliance thereon untenable.

This claim of ownership based upon this assignment must be critically examined, particularly in view of the fact it does not mention these water rights and White's claim based upon the contention that the words "and improvements of every kind or character situate thereon *or appurtenant thereto*" (emphasis supplied) vested the water right in him. White relies further upon the authority of Frank v. Hicks, 4 Wyo. 502, 35 P. 475, 482, rehearing denied 35 P. 1025, as controlling, particularly as follows:

"Whoever grants a thing grants, by implication, *that which is necessary to the beneficial use and enjoyment of the thing granted*. To take away the water right by which agricultural land is irrigated in the arid region leaves the land more nearly useless and valueless than a mill without a kiln, or a sawmill without a lumber yard, or a water mill without a dam. The water mill may be moved and used elsewhere. The land cannot be." (Emphasis supplied.)

This case states a rather universal rule insofar as conveyances of freehold interests are concerned. A careful reading of it persuades us the court made a distinction between a conveyance involving title and an instrument involving assignment of a leasehold interest, particularly when in the

discussion thereof it equated an attempt by the mortgagor or a tenant for life or for years to sever the water right as being a form of waste, and particularly when it was said, 35 P. 484:

> "* * * A mortgagor in possession, like a tenant for life or for years, may not commit waste, and may be restrained by injunction, if he attempts it. Waste is anything that damages the inheritance in the one case, * * *"

Throughout the entire opinion the importance of the water right to land is emphasized, and the opinion is illustrative of the view that the water right follows the freehold interest and therefore could in no way be applied except inferentially, and this is contrary to the position of White.

Because of the factual situation in this particular case it is not necessary to reach the question of the nature of the title King secured to the 1908 water rights under the then existing law and the transferability by the lessee upon lands owned by the State, nor is it necessary to re-examine and reverse the Carey case or to determine its applicability under the existing law as strongly urged by the State.

Stated summarily, the ground for the decision of the State Land Board was that White was not the owner of these water rights and not being the owner thereof was not such person as contemplated in the cited statutory section who might be entitled to receive reimbursement for the appraised value of the water rights. With this we agree.

■ Any title claimed or secured by White was by virtue of the above set out assignment. From the face of this assignment standing alone it cannot be considered to have severed and conveyed these water rights. White cites Whalon v. North Platte Canal & Colonization Company, 11 Wyo. 313, 71 P. 995, as authority for the proposition this assignment is sufficient for this purpose. However, if at all applicable here, it can stand only for the proposition that the words "sell, assign, transfer, and set over" are sufficient as words of grant to effect the conveyance of a water right. It is to be noted that the Whalon case treats a water right as an interest in real property and suggested that the word "assignment" is a misnomer. A water right is a "property right of high order," with "none of the characteristics of personal property," and it is real property. 2 Kinney, Irrigation and Water Rights, § 769, pp. 1328–1329 (2d Ed.), and numerous cases cited therein. The so-called assignments in the Whalon case, however, set out a definite description of the water right sought to be conveyed, including the recording data in the office of the State Engineer. It is elementary that to effect the transfer or conveyance of an interest in real estate that a description is essential and the subject matter identified.[1] Any conveyance of an interest in real property must clearly indicate intention to convey specific property and describe it. This rule has been applied to a conveyance of a water right. 93 C.J.S. Waters § 208, p. 1044. For this reason this assignment cannot be construed as a conveyance and is inoperative to sever the water right of King from these premises, if that were possible.[2]

■ To determine whether it was King's intention to convey this water right it was proper and necessary for the State Land Board to construe the conveyance. The omission of the mention of water rights in that instrument but which clearly appears and is included in the deeds conveying fee title to other lands from King to White, which instruments were a part and parcel of this same transaction, was properly considered. The State Land Board

---

1. 6 Thompson on Real Property, § 3020, p. 437 (1962 Repl.); 26 C.J.S. Deeds § 29, p. 639.

2. But see Scherck v. Nichols, 55 Wyo. 4, 95 P.2d 74, 80, wherein it is said in connection with cases holding such right severable, "But the rule above mentioned, stated in the foregoing cases, is no longer the law in this state."

further considered and upon conflicting testimony found there had been no consideration paid for these water rights. This is also indicative of the intention of King not to convey them to White.

This court long ago recognized the rule that if the words of a deed or conveyance are not plain that the surrounding circumstances may be considered to determine the intention of the parties. Balch v. Arnold, 9 Wyo. 17, 59 P. 434, 436; First National Bank and Trust Company of Wyoming v. Finkbiner, Wyo., 416 P.2d 224, 229.

■ White's principal reliance, and upon which he must rely to make this assignment effective to convey these water rights, rests on the rule asserted in Frank v. Hicks, supra, which held the water rights appurtenant to the lands passed by trust deed in absence of their specific mention. Condict v. Ryan, 79 Wyo. 211, 333 P.2d 684, 689–690, rehearing denied 335 P. 2d 792, is to the same effect. These cases, however, are not applicable when the assignment only covers or comprehends an assignment of a leasehold interest for a term of years. The inclusion of the words "appurtenant thereto" can only be construed as applying to that which was appurtenant to the estate assigned and only for the benefit of the leasehold. See Kingsway Realty & Mortgage Corporation v. Kingsway Repair Corporation, 223 App. Div. 281, 228 N.Y.S. 265, 268. An appurtenance has been variously defined but has been given the following definitions:

"* * * something annexed to another thing more worthy as principal, and which passes as incident to it, * * * An article adapted to the use of the property to which it is connected, and which was intended to be a *permanent accession to the freehold*. Szilagy v. Taylor, 63 Ohio App. 105, 25 N.E.2d 360, 361." (Emphasis supplied.) Black's Law Dictionary, p. 133 (4th Ed.).

The freehold interest in the lands to which these water rights were appurtenant was in the State, and an assignment of a leasehold interest for a term of years could not have resulted in a conveyance of a larger estate. The case of Frank v. Hicks, supra, follows a most ancient rule that the grant includes those things that are appurtenant. 1 Coke Upon Littleton, § 184, 121.-b (1st American from 19th London Ed., Corrected (1853)). This section is cited with approval in Harris v. Elliott, 10 Peters 25, 9 L.Ed. 333, 344 (1836). The same work also includes the following statement under 122.a:

"Secondly, that nothing can be properly appendant or appurtenant to any thing, *unless the principall or superior thing be of perpetuall subsistance and continuance.* * * *" (Emphasis supplied.)

The principal or superior thing must be construed as a freehold interest.

An appurtenance "goes with the principal thing." Cave v. Crafts, 53 Cal. 135, 140 (1878). It is to be noted that appellant herein does not submit any direct authority on the proposition here presented that use of the words "appurtenant thereto" in an assignment of a leasehold can refer to anything other than whatever estate the assignment passed in the land, which in this case is the leasehold for a two-year term. It may be suspected that this lack of any direct authority that an assignment of a leasehold interest can ever convey a larger or greater estate than is necessary for the use and enjoyment of the premises covered by the lease is that because this contention is so novel it has never heretofore been seriously pressed.

■ It is almost pedantic to state that an estate for years is not a freehold interest, Ralston Steel Car Co. v. Ralston, 112 Ohio St. 306, 147 N.E. 513, 516, 39 A.L.R. 334; and that although a leasehold be an interest in real estate it is not that of a freehold, Intermountain Realty Co. v. Allen, 60 Idaho 228, 90 P.2d 704, 705, 122 A. L.R. 647. Thus, if it were possible for King to sever these water rights, and this is suggested only arguendo for a disposal of this case, Scherck v. Nichols, supra, he must have done so by a proper conveyance of an interest in real estate. White se-

**590**

cured no title to these water rights herein involved by virtue of this assignment of the lease but only the right to the use and enjoyment of them during the term of the lease. He is not such owner as is contemplated by the statute relied upon. Any other application hereof would result in a construction of this statute to confer upon White merely as a lessee a windfall at the expense of the Permanent School Fund, which could never be implied as the intention of the legislature.

Because of what has been stated above the judgment of the district court is reversed and the decision of the State Land Board is reinstated and affirmed.

McINTYRE, Chief Justice (concurring).

I concur in the opinion of Mr. Justice Guthrie. However, I think there is an equally important reason for reinstating and affirming the decision of the State Land Board, which may not be apparent from Justice Guthrie's opinion.

Since 1909, it has been the law in Wyoming that water, "being always the property of the State," rights to its use attach to the land; and ordinarily such rights cannot be detached from the land. See Ch. 68, § 1, Wyoming S.L.1909; and § 41–2, W.S.1957.

Although certain water rights were acquired by Herbert King in 1908, the leasing law in existence at that time provided water rights developed by a lessee of state lands should, upon the expiration of the lease and its renewals, "become the property of the state," and not be considered as being improvements to be paid for by a subsequent lessee or purchaser. Ch. 79, § 24, Wyoming S.L.1890.

Therefore, regardless of whether we consider the laws in effect at the time rights were acquired by King, or the general law in effect since 1909, water rights developed on state land are and have been "property of the state." This means, even if King had attempted to transfer water rights to White, separate from the land, he could not have done so.