Thomas and Nancy **RENNARD**,
Appellants (Plaintiffs),

v.

Jerry and Rondi **VOLLMAR**,
Appellees (Defendants).

No. 98–59.

Supreme Court of Wyoming.

April 15, 1999.

Patrick T. Holscher of Schwartz, Bon, Walker & Studer LLC, Casper, for Appellant.

Keith P. Tyler, Casper, for Appellee.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN and TAYLOR,* JJ.

GOLDEN, Justice.

This appeal presents a dispute about an irrigation ditch between two adjoining landowners, the Rennards and the Vollmars, whose respective parcels earlier were joined as one under a unity of ownership. At issue are the rights in the irrigation ditch which runs across the Vollmars' non-irrigated parcel while delivering appropriated water to the Rennards' irrigated parcel. The Rennards' water rights and the irrigation ditch through which the Rennards' appropriated water flows were established when these adjoining parcels were one under a unity of ownership. In 1973, the unified property was divided, creating the two adjoining parcels involved in today's dispute; the two parcels have not been under common ownership since. The precise question we must answer is the applicability in this dispute of the rule stated in *Frank v. Hicks,* 4 Wyo. 502, 522, 35 P. 475, 480 (1893), *reh. denied,* 4 Wyo. 502, 35 P. 1025 (Wyo.1894), that "a right to the use of water for the irrigation of land, together with the ditch making such right available, becomes . . . so attached to the land irrigated as to pass by a conveyance of the land without mentioning the water right. . . ." After a bench trial, the district court held that the law of implied easements, not the *Frank* rule, applied to this dispute; that the Rennards had failed to prove the elements of the law of implied easements and, therefore, their claim of ditch ownership failed; and that the Vollmars owned the ditch. We hold that the district court erred; that the *Frank* rule applies to this dispute; and that the Rennards, as owners of the irrigated parcel, are owners of and are entitled to reasonable access to the ditch which crosses the Vollmars' non-irrigated parcel. We reverse and remand this case for further proceedings consistent with this decision.

* Retired November 2, 1998.

## ISSUES

Rennards present this single issue for our review:

Is the means of conveying water attached to a water right such that it passes in a transfer of water right ownership without specific mention of that means of conveyance.

Vollmars restate the issue presented to the Court for review as:

whether or not the tests of implied easement under Wyoming law are applicable to an existing irrigation ditch for which there is no express grant or reservation of easement.

## FACTS

The parties' two adjoining parcels are located in Natrona County and were originally one contiguous parcel under one ownership. The Rennard parcel is a portion of the property generally described as the NE¼ of Section 11. The Vollmar parcel is described as the NW¼ of Section 11. While the parcels were under one ownership, farming was established on the Rennard parcel; and it has always been irrigated and received water from an irrigation ditch crossing the entire property, including that part which is now the Vollmar parcel. The irrigation ditch runs across the Vollmar parcel before entering the Rennards' irrigated acreage.

The irrigation ditch apparently was built sometime in the 1940's while both parcels were owned by the Engbergs. The Engbergs irrigated the NE¼ of Section 11 of their land that eventually was sold to the Rennards. In 1964, the unified property was sold to the Schwartzkopfs. In 1967, the Schwartzkopfs were granted water rights for the irrigated land in the NE¼ of Section 11 with priorities of appropriation of July 27, 1934, April 25, 1936, and December 1, 1931. Water was delivered to the irrigation ditch from the Casper–Alcova Irrigation System.

In 1968, the unified property was again sold. After yet another sale in 1969 to the Kellers, the unified property, in 1973, was divided into the two adjoining parcels that exist today, the Kellers selling the irrigated NE¼ of Section 11 (the Rennard parcel) to Bruce and Esther Allen while retaining the non-irrigated NW¼ (the Vollmar parcel).

This transfer included "all water allotments and water rights appurtenant thereto," but was silent on the irrigation ditch which crossed the adjoining NW¼ (Vollmar parcel). The Allens sold the NE¼ parcel to Larry and Vicki Jo Allen, who later sold it to the Rennards on November 4, 1994. The Rennards purchased this parcel in order to farm it and intended to irrigate their fields. The contract for sale provided that the Rennards were to be given written permission for access to all the irrigation ditches for the purpose of clean up, preventative work, and the like. No such written permission was provided to Rennards nor was an easement for the ditches included in the deed from the Allens to the Rennards; however, the Rennards closed on their purchase with the Allens and accepted the property. The deed conveying the property was silent on water rights as well as access to the irrigation ditch.

The parcel that the Vollmars ultimately purchased went through a series of transfers that were entirely silent on ditch and water rights, and the record indicates that the Vollmars were not deeded any water rights and are not entitled to any of the water flowing through the irrigation ditch that is part of the Rennards' appropriation from the Casper–Alcova Irrigation System. The Vollmar parcel has never been used for agricultural purposes and is not so used today. The parties do not dispute that there was never an express grant or reservation of easement for the ditch in question in any of the transfers.

Shortly after acquiring their property, the Rennards began to order water from the Casper–Alcova system in order to irrigate their fields. They experienced difficulty receiving the water as it passed through the Vollmar property, and their investigations revealed that the Vollmars had placed irrigation headgates on two reservoirs they had built immediately astride the ditch and were taking water from the ditch. Believing the Rennards had no ownership interest in the ditch, the Vollmars denied the Rennards access to their property for maintenance and use of the ditch.

Rennards filed suit alleging intentional destruction of property, conversion, negligence, and prescriptive easement. They sought both damages and injunctive relief. The Vollmars filed a counterclaim for trespass and property damage. Both parties moved for summary judgment. In denying the Rennards' motion, the district court stated that

> [p]laintiffs' argument that "The Ditch Follows the Right," citing *Frank v. Hicks,* 4 Wyo. 502, 35 P. 1025 (Wyo.1893), would appear to have logical application to the case at bar. However, it would also appear essential to the claims asserted in this case for Plaintiffs to have a legally established easement or property right upon the property of the Defendants in order to sustain any of their claims.

The Vollmars were granted summary judgment on the issue of a prescriptive easement, all other summary judgment motions were denied, and the matter proceeded to bench trial. The district court issued findings of fact and concluded that the issue was whether the Rennards had an implied easement in the ditch. The district court found that the Rennards' use was permissive, and it was feasible for them to build their own ditch. The district court concluded, as a matter of law, no implied easement was intended at the time of the property division.

## DISCUSSION

*Standard of Review*

When a trial court in a bench trial makes express findings of fact and conclusions of law, we review the factual determinations under a clearly erroneous standard and the legal conclusions de novo. *Stansbury v. Heiduck,* 961 P.2d 977, 978 (Wyo. 1998); *Springer v. Blue Cross and Blue Shield of Wyoming,* 944 P.2d 1173, 1176 (Wyo.1997).

*Applicable Law*

The Rennards contend that the district court erred, as a matter of law, in applying the law of implied easements to resolve this dispute. They assert that long ago, in *Frank,* this Court adopted for this state the rule that a water right and the ditch which makes that right available to the land irrigated become so attached to the land irrigated as to pass by a conveyance of the land irrigated even though the conveyance is silent on the water right and ditch. In opposition, the Vollmars contend that the district court properly determined that the evidence showed that (1) Bruce and Esther Allen and the Kellers, at the time the unified property was divided, had no intention to create a ditch easement across the non-irrigated NW ¼ parcel; and (2) the use of the ditch by the Rennards' predecessors in title had always been permissive. The Vollmars assert that, as a matter of law, no implied or prescriptive easement existed.

We hold that the rule announced in *Frank* provides the applicable law with which to resolve this dispute. Among many other issues, *Frank* considered whether property conveyed to a trust by deed included water rights and irrigating ditches. Judgment creditors had foreclosed upon the trust deed, and one judgment creditor in a separate action was seeking to sell the water rights and irrigation ditches. The trustee presented the issue whether a right to the use of water for the purpose of irrigation, together with the necessary conduit for delivering the water to the place where it is used, is appurtenant to the land irrigated. This Court stated:

> The discussion should not be confined to the meaning or proper use of the word "appurtenant" or "appurtenance." The real question is one of vastly more importance than a mere question of the proper use of words. It is, substantially, whether a right to the use of water for the irrigation of land, together with the ditch making such right available, becomes in any way so attached to the land irrigated as to pass by a conveyance of the land without mentioning the water right, and to become subject to the liens and liabilities which attach to the land, and entitled to the exemptions to which the land is entitled.

*Frank,* 4 Wyo. at 522, 35 P. at 480.

In considerable detail, this Court in *Frank* analyzed the effect of a decision that the water right would not pass by a sale and conveyance of the land that did not mention the water right, and eloquently captured the issue's substance:

If this means that [the owner of the unified property] himself, or any one claiming the water right under him by deed executed by him after he parted with the land, could deprive the parties of the use of the water, it is a startling proposition. We cannot ignore, as judges, what we know, as men, of the general condition of the country. As residents of the arid region, interested in its business conditions, we know—and as lawyers and judges, deriving our knowledge from reported cases, we know—that there are vast quantities of agricultural land cultivated in the arid region, and made valuable by the use of water, the right to which depends upon a conveyance of the land without mentioning water, water right, or irrigating ditch. Land and water together are of great value. The value of the land without the use of the water is trivial. And the conditions are such, in many instances, that, if the owner of the land is deprived of the use of the water to which he has been accustomed, he cannot procure other water. In other instances it can be done only at great expense.

*Frank,* 4 Wyo. at 524, 35 P. at 481. Our attention is caught by several other passages as well. In the following passage, this Court spoke favorably of the widely approved common law doctrine "[w]hoever grants a thing grants, by implication, that which is necessary to the beneficial use and enjoyment of the thing granted." *Id.* at 526, 35 P. at 482. This Court said:

> To take away the water right by which agricultural land is irrigated in the arid region leaves the land more nearly useless and valueless than a mill without a kiln, or a saw mill without a lumber yard, or a water mill without a dam. The water mill may be moved and used elsewhere. The land cannot be. Another kiln or lumber yard might be provided at comparatively small expense. In most of the arid region, water rights furnishing sufficient water for the irrigation of farms have become quite valuable, and difficult to obtain, in many localities, at any reasonable expense. The pipes used to conduct water to a dwelling house would pass at common law by a conveyance of the house, because necessary to the use and enjoyment of the house

in the usual manner, though they extend far beyond the premises granted, and might be replaced at small expense. The water right also passes. Whatever is necessary to the beneficial use and enjoyment of the thing granted, whether corporeal or incorporeal, passes, at common law, as incident or "quasi appendant" to the thing granted; but we must not call them appurtenances, if they are corporeal things. They then pass as part and parcel of the grant.

*Id.*

Later in the opinion, after reviewing cases from California, Montana, Washington, and Oregon, this Court accepted the prevailing view of the courts in the arid region states "that a water right becomes appurtenant to the land upon which the water is used, and the ditch, water pipe, or other conduit for the water becomes attached to the land, either as appurtenant or incident to the land, and necessary to its beneficial enjoyment, and therefore becomes part and parcel of the realty." *Id.* at 531, 35 P. at 484.

 As the district court noted, *Frank* clearly established the precept that "a ditch follows the right;" the question is whether that precept applies within the context of this dispute, *i.e.,* the irrigation ditch crosses the land of one not entitled to any of the water carried by the ditch, and the water right and the ditch were established before the unified property was divided. The district court chose, incorrectly, to find the answer in the intent of the parties at the time the unified property was divided. *Frank* teaches that the answer is found in the intent of the party who established the water right and the ditch before the unified property was divided. That intent is that the water right and the ditch for the water become part and parcel of the land irrigated. *Accord, Bard Ranch, Inc. v. Weber,* 538 P.2d 24, 34 (Wyo.1975) ("It is necessary and usual in this state for water appropriations to be served by ditches, or an interest in ditches, and we can see no purpose to be served by anatomizing the interest in a ditch necessary to serve a water right into finer categories. If a person has a right to convey water through a ditch, he owns an interest in that ditch or a share of the ditch

to the extent of the water right he is entitled to convey through it."). *See also, Wallis v. Luman,* 625 P.2d 759, 765–66 (Wyo.1981); *White v. Bd. of Land Comm'rs,* 595 P.2d 76, 80–81 (Wyo.1979); *Condict v. Ryan,* 79 Wyo. 211, 227–29, 333 P.2d 684, 689–90 (Wyo.1958); *Big Goose & Beaver Ditch Co. v. Wallop,* 382 P.2d 388, 392–93 (Wyo.1963); and *Sturgeon v. Brooks,* 73 Wyo. 436, 456, 281 P.2d 675, 682 (Wyo.1955).

We hold, therefore, that the Vollmars do not have adjudicated water rights and are not entitled to any of the Rennards' appropriated water received, via the ditch, from the Casper–Alcova Irrigation System; the Rennards have exclusive ownership of the ditch and the Vollmars are not entitled to divert any water from that ditch to their reservoir; and the Rennards' ownership of the ditch permits them to enter the Vollmars' land to maintain and use the existing ditch.

We reverse the district court's order and remand with directions that judgment on this issue be entered for Rennards and for trial on the remaining claims.